| | | |
|---|---|---|
| **Star Waste Services, LLC;** | * | |
| **Englund Bros. Company, Inc.;** | * | |
| **Star Waste Disposal, LLC;** | * | |
| **American Waste Network, LLC;** | * | Civil #: _____ |
| **American Waste Services, LLC;** | * | |
| **Ladies First Waste, LLC** | * | JUDGE: _____ |
| | * | |
| **Plaintiffs** | * | MAGISTRATE: _____ |
| | * | |
| **V.** | * | |
| | * | |
| **U.S. Waste, LLC;** | * | **Jury Trial Demanded** |
| **Clarence Joseph Emmer** | * | |
| (aka Jay Emmer; | * | |
| aka Jay Dixon; | * | |
| aka Jayson R. Emmer; | * | |
| aka J. Emmer; | * | |
| aka Jay San Fallipo; | * | |
| aka Tony Sanfilipo**);** | * | |
| **Dan Franklin Emmer, Sr.;** | * | |
| (aka Dan Emmer; | * | |
| aka Danny Emmer; | * | |
| aka Danny F. Emmer; | * | |
| aka Danny Franklin Emmer; | * | |
| aka Danny F. Dimmer; | * | |
| aka George Emmer; | * | |
| aka Dan Emmor**);** | * | |
| **Dan Franklin Emmer, Jr.** | * | |
| (aka Daniel Richerson; | * | |
| aka Danny Richardson; | * | |
| aka Danny Emmer; | * | |
| aka Danny F. Emmer II; | * | |
| aka Danny E. Emmer II; | * | |
| aka Danny Emmes; | * | |
| aka Daniel Emmes; | * | |
| aka Daniel Emmer; | * | |
| aka Danny F. Emmer**);** | * | |
| **Jason R. Emmer;** | * | |
| **George Franklin Emmer;** | * | |
| (aka George F. Emmers; | * | |
| aka George Emmes) | * | |

1

**Bud Franklin Emmer, Jr.;**      *
(aka Bud Emmer)                *
                                       *
           **Defendants**       *

## VERIFIED COMPLAINT

1. Plaintiffs Star Waste Services, LLC; Englund Bros. Company, Inc.; Star Waste Disposal, LLC; American Waste Network, LLC; American Waste Services, LLC; and Ladies First Waste, LLC hereby alleges and states the following complaint against U.S. Waste, LLC; Clarence Joseph Emmer ;(aka Jay Emmer; aka Jay Dixon; aka Jayson R. Emmer; aka J. Emmer; aka Jay San Fallipo; aka Tony Sanfilipo); Dan Emmer, Sr.; (aka Dan Emmer; aka Danny Emmer; aka Danny F. Emmer, aka Danny Franklin Emmer; aka Danny F. Dimmer; aka George Emmer; aka Dan Emmor); Dan Franklin Emmer, Jr.; (aka Daniel Richerson; aka Danny Richardson; aka Danny F. Emmer II; aka Danny E. Emmer II; aka Daniel Emmes); Jason R. Emmer; George Franklin Emmer; (aka George Emmers; aka George Emmes); and Bud Franklin Emmer, Jr.; (aka Bud F. Emmer; aka Bud Emmer) (hereinafter referred to collectively as "Defendants").

## THE PARTIES

2. STAR WASTE SERVICES, LLC, Plaintiff, is and was at all times relevant hereto a limited liability company formed and in good standing under the laws of the State of Tennessee, with its principal place of business in Hamilton County, Tennessee at 1197 Penobscot Road, Soddy Daisy, TN 37379. Susan H. Englund and William L. Englund, Sr. ("William Englund, Sr.") are each fifty percent (50%) interest Member/Managers of the , LLC. The Articles of Organization were created pursuant to

2

the Tennessee Limited Liability Company Act, T.C.A. Title 48, Chapters 1-11 of the Tennessee Revised Limited Liability Act. Any action taken by the company, not in the ordinary course of business must be approved by a majority vote, per the Articles of Organization with the Operating Agreement.

3. ENGLUND BROS. COMPANY, INC., Plaintiff, is and was at all times relevant hereto a corporation formed and in good standing under the laws of the State of Tennessee, with its principal place of business in Hamilton County, Tennessee at 1197 Penobscot Road, Soddy Daisy, TN 37379. Susan H. Englund and William L. Englund, Sr. (William Englund, Sr.) are each fifty percent (50%) shareholders of the corporation. The corporate charter was created pursuant to the Tennessee Business Corporation Act, Title 48, Chapters 11-27 of the Tennessee Business Corporation Act. Any action taken by the corporation, not in the ordinary course of business must be approved by a majority vote of the Board of Directors.

4. STAR WASTE DISPOSAL, LLC, Plaintiff, is and was at all times relevant hereto a limited liability company formed and in good standing under the laws of the State of Tennessee, with its principal place of business in Hamilton County, Tennessee at 1197 Penobscot Road, Soddy Daisy, TN 37379. During August of 2006, William L. Englund, Jr. ("William Englund, Jr.") was a ninety-nine percent (99%) interest Member/Manager and Marcus W. Englund ("Mark Englund") was a one percent (1%) interest Member/Manager. On October 6, 2006, William Englund, Jr. pledged his majority interest to Mark Englund, making Mark Englund one hundred percent (100%) interest Member/Manager. The Articles of Organization were created pursuant to the Tennessee Limited Liability Company Act, T.C.A. Title 48, Chapters 1-11 of the

Tennessee Revised Limited Liability Act. Any action taken by the company, not in the ordinary course of business must be approved by a majority vote, per the Articles of Organization with the Operating Agreement.

5. AMERICAN WASTE NETWORK, LLC, Plaintiff, is and was at all times relevant hereto is a limited liability company formed and in good standing under the laws of Georgia with its principal place of business in Fulton County, Georgia at 931 Monroe Drive, NE, Suite A102 Box 345, Atlanta, GA 30308. American Waste Network, LLC was formed on February 13, 2007. Susan H. Englund and William Englund, Sr. are each fifty percent (50%) interest Member/Managers. The Articles of Organization were created and any action taken by the company, not in the ordinary course of business must be approved by a majority vote, per the Articles of Organization with the Operating Agreement.

6. AMERICAN WASTE SERVICES, LLC, Plaintiff, is and was at all times relevant hereto is a limited liability company formed and in good standing under the laws of Georgia with its principal place of business in Fulton County, Georgia at 931 Monroe Drive, NE, Suite A102 Box 345, Atlanta, GA 30308. American Waste Services, LLC was formed on February 13, 2007. Susan H. Englund and William Englund, Sr. are each forty percent (40%) interest Member/Managers, and William Englund, Jr. and Mark Englund are each ten percent (10%) interest Member/Managers. The Articles of Organization were created and any action taken by the company, not in the ordinary course of business must be approved by a majority vote, per the Articles of Organization with the Operating Agreement.

4

7. LADIES FIRST WASTE, LLC, Plaintiff, is and was at all times relevant hereto is a limited liability company formed and in good standing under the laws of Georgia with its principal place of business in Fulton County, Georgia at 931 Monroe Drive, NE, Suite A102 Box 345, Atlanta, GA 30308.   Ladies First Waste, LLC was formed on February 13, 2007.  Susan H. Englund and William Englund, Sr. are each fifty (50%) percent interest Member/Managers. The Articles of Organization were created and any action taken by the company, not in the ordinary course of business must be approved by a majority vote, per the Articles of Organization with the Operating Agreement.

8. Upon information and belief, US WASTE, LLC, Defendant, is and was at all times relevant hereto a limited liability company registered and in default standing with the State of Wisconsin. Its mailing address is listed as P.O. Box 371127, Milwaukee, Wisconsin, 53237. Upon Plaintiffs' information and belief, Defendant Clarence Joseph Emmer is a one hundred percent (100%) interest Member/Manager.  Upon Plaintiffs' information and belief US Waste Atlanta, LLC was formed and organized by US Waste, LLC.

9. Upon information and belief, CLARENCE JOSEPH EMMER, Defendant, (also known in the State of Georgia as Jay San Fallipo, also known as Tony Sanfilipo), (also known in the State of Wisconsin as Jay Dixon, also known as Jayson R. Emmer, also known as J. Emmer and also known as Jay Emmer) (hereinafter known as "Clarence Emmer"), is and was at all times relevant hereto an individual residing in the State of Wisconsin, City of New Berlin, residing at 16235 West Beloit Road, New Berlin, WI 53151.  Upon Plaintiffs' information and belief, he is the one hundred percent (100%) interest Member/Manager of US Waste Atlanta, LLC and US Waste, LLC and to the best

of the Plaintiffs' information and belief of US Waste Network, LLC, and US Waste and Special Waste, LLC.

10. Upon information and belief, DAN FRANKLIN EMMER, SR., Defendant, (also known as Dan Emmer; aka Danny F. Dimmer; aka George Emmer; aka Dan Emmor; aka Danny Emmer; aka Danny F. Emmer; aka Danny Franklin Emmer), (hereinafter known as "Dan Emmer, Sr.") was and is at all times relevant hereto an individual residing in the State of Georgia, City of Chickamauga, residing at 5 South Orchard, Chickamauga, GA 30707.

11. DANIEL FRANKLIN EMMER, JR., Defendant, (also known in the State of Wisconsin as Daniel Richerson, Daniel Richardson; aka Danny Emmer; aka Danny F. Emmer II; aka Danny E. Emmer II; aka Danny Emmes; aka Daniel Emmes; aka Daniel Emmer; aka Danny F. Emmer), (hereinafter known as "Dan Emmer, Jr.") is and was at all times relevant hereto an individual residing in the State of Georgia, County of Catoosa, at 1878 Hedrick Road, Ringgold, GA 30736.

12. JASON R. EMMER, Defendant, (hereinafter known as "Jason Emmer"), is and was at all times relevant hereto as an individual residing in the State of Georgia, County of Catoosa, residing at 247 Henry Drive, Ringgold, GA 30736.

13. GEORGE FRANKLIN EMMER, Defendant, (also known as George Emmers; aka George Emmes) (hereinafter known as "George F. Emmer") is and was at all times relevant hereto as an individual residing in the State of Georgia, County of Catoosa, residing at 3935 Stewart Road, Ringgold, Georgia 30736 .

14. BUD FRANKLIN EMMER, JR., Defendant, (also known as Bud Emmer) (hereinafter known as "Bud Emmer") is and was at all times relevant hereto as an

individual residing in the State of Georgia, County of Catoosa, residing at 5 South Orchard, Chickamauga, GA 30707.

15. All of the above named individual Defendants are related by blood and have engaged in illegal racketeering activities more than once.

## JURISDICTION

16. This action is brought under the Federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961 et seq. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331.

17. Because this action is so closely related to claims brought under Tennessee state law that they form part of the same controversy, under Article III of the United States Constitution, this Court has jurisdiction over Tennessee common and statutory law pursuant to 28 U.S.C. § 1367.

18. A substantial part of the events and occurrences giving rise to the Plaintiffs' claims stated herein occurred in this Federal District; a substantial Part of the property that is the subject of this action is situated in this District and in the State of Georgia by way of interstate commerce and the State of Tennessee. Venue is proper pursuant to 28 U.S.C. § 1391 and 1965(b).

## FACTS

19. Plaintiff, Star Waste Services, LLC was organized and registered in the State of Tennessee on October 10, 2000. On or about that date, Star Waste Services, LLC became indebted to several financial lending companies for the purchase of waste hauling

7

equipment and trucks. Personal guarantees were signed by William Englund, Sr. and David Lane, individually and as Member/Managers. The financial lending companies were: Federated Capital Services and Financial Federal Credit, Inc. Purchase money security interest liens were recorded on the titles of the equipment and trucks. UCC-1s were filed with the State of Tennessee. Upon purchase, manufacturers' serial numbers, identification plates and additional welded serial numbers were present on the equipment containers, and VIN numbers on the vehicles were listed on the UCC-1s. (*See Exhibit 1*). Specifically, the contracts entered into with the subject financial lending companies placed restrictions on the equipment, such as selling without the lending companies' approval.

20. Englund Bros. Company, Inc. was organized and registered in the State of Tennessee on November 18, 1998. On or about October 10, 2000, Englund Bros. Company, Inc. (EBC) became indebted to financial lending companies for the purchase of waste hauling equipment and trucks. Personal guarantees were signed by William Englund, Sr. and David Lane, individually, as shareholders. The financial lending companies were: Federated Capital Services and Center Capital Corporation. Purchase money security interest liens were recorded on the titles of the equipment and trucks. UCC-1s were filed with the State of Tennessee. Upon purchase, manufacturer's serial numbers, identification plates and additional welded serial numbers were present on the equipment containers, and VIN numbers on the vehicles were listed on the UCC-1s. Specifically, the contracts entered into with the subject financial lending companies placed restrictions on the equipment, such as selling without the lending companies' approval. Englund Bros. Company, Inc. is a construction company and also provides

equipment leasing of their waste hauling equipment to Star Waste Services, LLC. In July of 2005, Star Waste Disposal, LLC. began leasing this same equipment through Star Waste Services, LLC.

21. Over a period of time, some of Plaintiff Star Waste Services, LLC's, Member/Managers changed and the percentage of ownership changed, but the LLC has always remained in the Englund family. The Articles of Organization are strictly adhered to with the Operating Agreement and Amendments enforced. From its inception, either one was a Member/Manager or one worked for the company. In each limited liability company, formed thereafter, Member/Managers were always family members. In May of 2003, Member/Managers were Susan H. Englund, William Englund, Sr., Mark Englund, and William Englund, Jr. In July of 2005, Member/Managers were Susan Englund, William Englund, Sr., and William Englund, Jr. As it stands today, the limited liability company has two (2) equal fifty percent (50%) interest Member/Managers: Susan H. Englund and William Englund, Sr. To dispose of any equipment by selling, term leasing, or by contract mean the signature of both Member/Managers are required. (*See Exhibit 2 for current membership and Exhibit 3 for the Articles of Organization with the Operating Agreement*.)

22. On July 12, 2005, Plaintiff, Star Waste Disposal, LLC was formed and duly registered under the laws of the State of Tennessee. Its principal place of business was in Hamilton County, Tennessee. Mark Englund was listed as the only Member/Manager at one hundred percent (100%) interest upon its inception. (*See Exhibit 4*)

23. Star Waste Disposal, LLC leased equipment and trucks from Star Waste Services, LLC. Customer accounts were conveyed from Star Waste Services, LLC to Star

Waste Disposal, LLC. Star Waste Services, LLC became primarily a leasing company in the State of Tennessee and Georgia and continues to be a leasing company and waste hauler on the Southern Gulf Coast working with the Federal Emergency Management Agency (FEMA). They also have customers in the construction industry on the Southern Gulf Coast offering them full service waste hauling.

24. During the July 1, 2005, Business Meeting, it was agreed that no members of these two companies could concurrently own membership in both companies known as Star Waste Services, LLC and Star Waste Disposal, LLC. They remain today as two separate entities.

25. Star Waste Disposal, LLC, shortly thereafter, made an acquisition of residential carts and became indebted to First Federal Leasing for four hundred ninety-five (495) Otto Environmental Residential Carts and also indebted directly for four hundred ninety-five (495) carts to the manufacturer, Otto Environmental, all of which are identified with serial numbers. Also, the company purchased a 1991 Mack DM Series Roll-Off Truck financed with Cornerstone Community Bank ("Cornerstone") and became indebted to them. (*See Exhibit 5, Exhibit 6, Exhibit 7*)

26. On March 5, 2006, a Member/Manager was added to Star Waste Disposal, LLC. William Englund, Jr. became a ninety-nine percent (99%) interest Member/Manager and Mark Englund, a one percent (1%) interest Member/Manager.

27. Plaintiffs American Waste Network, LLC, Ladies First Waste, LLC and American Waste Services, LLC were formed on 2/13/07. These Georgia limited liability companies have their principal place of business located in Georgia, Fulton County at 931 Munroe Drive NE, Suite A102 Box 345, Atlanta, GA 30308.

28. Star Waste Services, LLC, Englund Bros. Company, Inc., Star Waste Disposal, LLC, American Waste Network, LLC, Ladies First Waste, LLC and American Waste Services, LLC cannot operate at the present time because of the Defendants' scheme to gain control of all assets.

- Plaintiff, Star Waste Services, LLC is a leasing company in Tennessee and Georgia, and a leasing company and a waste hauler on the Southern Gulf Coast working also with FEMA. They also have customers in the construction industry on the Southern Gulf Coast, offering them full service waste hauling.

- Plaintiff, Englund Bros. Company, Inc. is a construction company which uses its own equipment and leases waste containers and trucks to other companies.

- Plaintiff, Star Waste Disposal, LLC is a waste hauler registered in Tennessee to conduct business in the commercial, industrial and construction industry segments.

- Plaintiff, American Waste Network, LLC is a leasing company in Georgia and leases equipment to Ladies First Waste, LLC and American Waste Services, LLC.

- Plaintiff, Ladies First Waste, LLC is a waste hauler registered in Georgia to conduct business in the commercial industry segment.

- Plaintiff, American Waste Services, LLC is a waste hauler registered in Georgia to conduct business in the commercial, industrial, and construction industry segments.

29. The "Englund family" has been acquainted with the "Emmer family" for many years. This acquaintance was more social than professional until the last few years. To the best of the Englund's information and belief, Defendant Clarence Emmer and his

brother, Defendant Dan Emmer, Sr. formed a waste hauling company in Chattanooga, Tennessee in about 1981 and sold the company in about 1985, and both Defendants, with their families, moved to Wisconsin.

30. To the best of the Plaintiffs' knowledge and belief, there has been a pattern of aliases used by the Defendants with their personal names and company names:

(a) Aliases:

- Clarence Joseph Emmer (aka Jay Emmer; aka Jay Dixon; aka Jayson R. Emmer; aka J. Emmer;  aka Jay San Fallipo; aka Tony Sanfilipo)

- Dan Franklin Emmer, Sr. (aka Dan Emmer; aka Danny Emmer; Danny F. Emmer; aka Danny Franklin Emmer; aka Danny F. Dimmer; aka George Emmer; aka Dan Emmor)

- Dan Franklin Emmer, Jr. (aka Daniel Richerson; aka Danny Richardson; aka Danny Emmer; aka Danny F. Emmer II; aka Danny E. Emmer II; aka Danny Emmes; aka Daniel Emmes; aka Daniel Emmer; aka Danny F. Emmer)

- George Franklin Emmer (aka George F. Emmers; aka George Emmes)

- Bud Franklin Emmer, Jr. (aka Bud Emmer)

(b) Company Names:

- Star Waste

- Star US Waste Services, LLC

- US Waste Network, LLC

31. In 2005 and early in 2006,  the Plaintiffs' assets consisted of nine (9) waste hauling trucks, one hundred ten (110) rolloff containers, two (2) compactors, two hundred forty-nine (249) front load containers, twenty four hundred ninety (2490) residential carts, tools, and office furniture, equipment and supplies; valued at one

12

million, five hundred one thousand, eight hundred dollars ($1,501,800.00). At that time, one of Plaintiffs' Star Waste Services, LLC's Member/Managers, William Englund, Sr., was approached by Clarence Emmer, Defendant, for the purpose of discussing the forming of a fifty-fifty (50-50) equal interest in a waste management company, where each party would contribute a fifty-fifty (50-50) equal ratio of equipment for the proposed alliance. To the best of the Plaintiffs' information and belief, the Defendants never intended to form an alliance; they intended to defraud the Plaintiffs, take all equipment and other assets, to sell them, and to end up with the profits. (The Plaintiffs also lease additional trucks and containers from others during their normal course of conducting business.)

32. Defendant, U.S. Waste, LLC, the limited liability company headquartered in Milwaukee, Wisconsin, was organized on May 28, 2004 and purportedly has Defendant Clarence Emmer as a one hundred percent (100%) interest Member/Manager. The Wisconsin Department of Financial Institutions shows the company on April 1, 2006 recording the LLC as delinquent and not filing its 2005 annual report. US Waste, LLC formed by Clarence Emmer, formed US Waste Atlanta, LLC. It was registered with the State of Georgia by mere registration of an LLC filing with a company name. However, to the best of the Plaintiffs' information and belief, the Georgia Secretary of State shows US Waste Atlanta, LLC was organized on November 3, 2006, by US Waste, LLC, P.O. Box 371127, Milwaukee, Wisconsin, 53237. US Waste Atlanta, LLC is recorded as having 1642 Koppers Road, Atlanta, Georgia, 30288, as its principal mailing address. To the best of Plaintiffs' knowledge and belief, the Defendants defaulted on the lease agreement at 1642 Koppers Road and they do not have any active address in Georgia to

13

conduct a business from. US Waste Atlanta, LLC never had a business license, never had

a federal identification number (EIN), never had a bank account, and no assets. It was a

vessel through which the Defendants' conspired against and defrauded the Plaintiffs.

Any of the Defendants' monies paid on behalf of US Waste Atlanta, LLC came from

Milwaukee, from US Waste, LLC and/or the personal funds of the Defendants. US

Waste Atlanta, LLC and its parent company, US Waste, LLC (a Wisconsin company),

upon information and belief, have Defendant Clarence Emmer as their sole

Member/Manager. During this entire term of events, the Defendants have made no

commitment to contribute their equipment assets to form any alliance. This further

confirms the Defendants never intended to form an alliance.

    33. In January, 2006, Defendant Clarence Emmer called one of the Plaintiffs, Star

Waste Services, LLC'S Member/Managers, William Englund, Sr. Defendant Emmer

mentioned that the Atlanta, Georgia area was the location in which he had researched

with the largest potential with close proximity to Chattanooga for the new joint venture.

Defendant Clarence Emmer further mentioned this would work out great with the recent

relocation by this brother, Defendant Dan Emmer, Sr., and his family, and stated others

would also be relocating to this area in North Georgia. Defendant Clarence Emmer

stated, "I can get my equipment to Atlanta pretty quick, but we can be ready to start

moving yours right away, while I'm moving mine here". Defendant Emmer also

mentioned that the proposed new company could be ready to do business there by early

March, 2006. William Englund, Sr. provided Defendant Clarence Emmer with contact

information for Plaintiffs' attorney in Chattanooga. Defendant Emmer was to pass it on

to his attorney in Milwaukee so the attorneys could begin drafting the paperwork for the

parties to review. (The Plaintiffs argue that their allegations of fraud by the Defendants, is further supported by the fact that Defendant Clarence Emmer never produced their equipment for the alliance and the Defendants' attorney never contacted the Plaintiffs' attorney to draft any paperwork for review.)

34. On or about the same date in January 2006, as discussed above, Defendant Clarence Emmer also visited the Plaintiffs' facility office at 2103 Tinsley Place in Chattanooga. (Plaintiff Star Waste Disposal, LLC leased this facility.) Defendant Emmer met that day with Plaintiff Star Waste Disposal, LLC's Member/Manager Mark Englund and one of Plaintiff Star Waste Services, LLC's Member/Manager William Englund, Sr. Defendant Clarence Emmer viewed the Plaintiffs' equipment on site and there were discussions about the equipment needs for the proposed venture. Defendant Emmer encouraged the Plaintiffs to begin assembling all their rolloff containers and not to make it available for further use with new customers, as it was pulled from locations after customer's cancelled and completed their projects. As Defendant Emmer left the meeting, he said that he would get with his attorney in Milwaukee on his return and pass on the contact information for the Plaintiffs' attorney, so they could draft the paperwork for review of the operating agreement between the parties. After that date, the Plaintiffs started assembling rolloff containers and cutting back on new customers, in reliance on the Defendants' promises to work towards an alliance.

35. In late March of 2006 the negotiations were no further along than before, with no activity from Defendant Clarence Emmer, with no paperwork being negotiated by the attorneys of the parties for the Articles of Organization with an Operating Agreement for the proposed new company. Defendant Clarence Emmer called Mark Englund and they

had discussions about plans for the proposed venture. Emmer asserted that the attorney's negotiations would be forthcoming. In May of 2006, Defendant Clarence Emmer called Mark Englund and stated that he would be in Chattanooga soon to move forward with the planning. In early June, 2006, Defendant Clarence Emmer stopped by the Plaintiffs' office at 2103 Tinsley Place in Chattanooga, and visited with Mark Englund. Englund informed Defendant Clarence Emmer that he was going to Georgia, specifically to Atlanta, to start another additional operation for the Plaintiffs whether Emmer was involved or not. The Plaintiffs' Member/Managers, prior to and around this period, had been approached by a national company's acquisition buyer who wanted to purchase some or all of Star Waste Services, LLC's equipment and to purchase Star Waste Disposal, LLC's customer routes in Chattanooga. Additionally, another national firm approached Star Waste Disposal, LLC about buying the same residential route customers. Defendant Clarence Emmer left Plaintiffs' office that day in June, 2006, and later called Mark Englund back by phone, and he was adamant that the parties could reach a final agreement and jointly have the attorneys get the formal papers drawn up. Prior to that time, Plaintiffs were not aware that Defendant Clarence Emmer knew about the offers, purportedly through his relatives that worked for those national companies. Defendant Clarence Emmer persuaded Mark Englund to abate any further conversations with any potential buyers. Defendant Emmer also persuaded Mark Englund into shutting down the front load business in Chattanooga so the Plaintiffs could get their equipment assembled in one location and start moving it to Atlanta within thirty (30) days. In reliance on the merger promise by Defendant Emmer, the Plaintiffs shut down the front load business sector and started assembling the front load containers on a separate lot in Chattanooga.

16

During June and July, 2006, Defendant Clarence Emmer visited the Plaintiffs' facility in Chattanooga and also made phone calls to some of the Plaintiffs' Member/Managers, and discussed partnering plans, but was never available when asked to plan for a meeting with or between attorneys to draft the paperwork. Defendant Emmer continued with his position that the finalization would be forthcoming soon.

36. On September 27, 2006, in reliance of Defendant Clarence Emmer's promise of a final agreement to merge, Mark Englund was picking up front load containers from commercial customers and trying to finalize that business sector in Chattanooga. Defendant Jason Emmer was working with Mark Englund, following him in the front load truck. Mark Englund was removing front load containers from customers' properties and then he would load (transfer) the containers to another truck that Jason Emmer was driving. After receiving a load of containers on Jason Emmer's truck, then Emmer would transport that load to the Plaintiff's lot on 28th Street in Chattanooga for storage. Mark Englund went to Grubb Landscaping in North Hamilton County to pick up a front load container. The manager at the property refused to let him have the container and stated that Englund would have to pay him rent for the container being on his property. Englund, who never left his vehicle, was attacked by two men with an ax and a shovel. Englund was the only one who sustained injuries. Yet, he was arrested and charged with attempted murder. Defendant Jason Emmer was involved in the bonding out process, until William Englund, Sr. arrived and took over responsibility for the bond signing. At the preliminary hearing on March 1, 2007, the charges were reduced to aggravated assault by the judge and have been sent to the grand jury for possible indictment. The judge further stated that this matter should have been brought before

17

him in the course of a civil action suit after listening to the testimony about the incident and also commented that he did not believe the testimony of the prosecution's witnesses.

37. To the best of Plaintiffs' information and belief, Defendants Clarence Emmer and Dan Emmer, Sr. appeared at the preliminary hearing on March 1, 2006, and offered to testify for the prosecution. To the best of the Plaintiffs' information and belief, the Defendants took advantage of this situation to further their scheme of fraud and theft. Plaintiffs believe this further confirms the Defendants' tactics and strategies to influence or create events with hardships to undermine victims with their schemes.

38. On that same day, March 1, 2007, after the hearing, William Englund, Sr. was physically threatened by Defendant Dan Emmer, Sr., who used his hand to resemble a cocked gun and pointed it at Englund, and told him that: "This is what happens when you mess with the Emmers and you better lay off." This incident occurred in the Hamilton County Courthouse when Emmer approached Englund as he was attempting to exit the building. Mark Englund's attorney witnessed the confrontation and walked over and broke it up with a warning to Emmer. This allowed William Englund, Sr. to exit the building without further confrontation.

39. As part of the Defendants' scheme, Defendant Clarence Emmer, using Plaintiffs' Star Waste Services, LLC's and Star Waste Disposal, LLC's assets, leased a facility building with lot for the proposed company; rented the Englund brothers, Mark and William, Jr., an apartment; and encouraged the Plaintiffs' Member/Managers to move all equipment and assets to Atlanta for the benefit of the newly forming company. The Plaintiffs found that the proposed business facility was leased in the name of US Waste Atlanta, LLC. Furthermore, the company was not registered with the State of

Georgia until November 3, 2006, after the Defendants' physical theft of the Plaintiffs' assets began. U.S. Waste Atlanta, LLC's organizer was given as US Waste, LLC, and the attorney-in-fact filing the paperwork was Jill Campo, Esquire, with the firm of Gatzke and Ruppelt SC, 15730 West National Avenue, New Berlin, Wisconsin, 53151.

40. Defendant Clarence Emmer was the individual who appeared in person to sign the lease for the proposed business facility at 1642 Koppers Road, Atlanta, Georgia, in Fulton County. (*See Exhibit 8*) But, Defendant Emmer did not sign the lease as "Clarence Emmer." He signed it with an alias: "Jay San Fallipo" on behalf of U.S. Atlanta, LLC, at that time a non-existent company. The lease began on November 1, 2006, and was to run through October 30, 2007. Purportedly, the Defendants defaulted on their lease at that location in December, 2006.

41. Back in July, 2006, Defendant Jason Emmer made himself available to work around the Plaintiffs' Chattanooga facility and in August, he started packing the Plaintiffs' equipment for transfer to storage and began moving shop equipment and office equipment with business and personal files and other furnishings to storage facilities in Chattanooga because the Plaintiffs were not renewing the office lease at 2103 Tinsley Place in Chattanooga.

42. In reliance on Defendant Clarence Emmer's rental of business property in Atlanta, and in his request that they begin working in Atlanta immediately and assertion he would pay rent for an apartment for Plaintiffs' Member/Mangers Mark Englund and William Englund, Jr., the two moved permanently to Atlanta. Defendant Clarence Emmer paid for one-half month rent from October 15, 2006, and the November 2006 rent with the Milwaukee based US Waste, LLC by check from a Milwaukee Bank. The

apartment was located at Alexan Buckhead, 360 Pharr Road, Atlanta, Georgia. In reliance on the Defendants' fraudulent scheme, Mark Englund, upon the request of Defendant Clarence Emmer, also moved six (6) of the Plaintiffs' containers from Tennessee to the Koppers Road facility in Atlanta, Georgia. Office equipment and supplies belonging to the Plaintiffs were placed in the Koppers Road location. This included desks, chairs, file cabinets, copiers, printers, and paperwork with pre-signed stationary for customer correspondence (signed by William Englund, Sr. and Mark Englund). The Plaintiffs' computers had previously been and continued to be stored at the Englunds' residence. Before physically moving in, however, Mark and William Englund, Jr., painted and made repairs to the office building at the Koppers Road location. The Defendants only moved one (1) desk purportedly belonging to Defendant Jason Emmer into that facility and no other equipment was ever delivered or stored there belonging to the Defendants.

43. Although William Englund, Sr. pressed Defendant Clarence Emmer to "have your attorney contact my attorney," and although he gave Emmer his attorney's business card, no draft contract was ever written up for approval. Defendant Emmer always had excuses for why the contract had not been drafted. As the Plaintiffs later realized, one thing always remained in the Defendants' focus and that was to move all the Plaintiffs equipment to the Defendants' secreted locations.

44. Mark Englund and William Englund, Jr., were now in Atlanta marketing for the proposed new company in reliance to the Defendants' promises. This permanent relocation for them to Atlanta kept the Plaintiff Star Waste Disposal, LLC from continuing any business they had in Chattanooga and jeopardizing their daily asset

management.  Furthermore, this relocation to Atlanta of the Englunds prevented them from realizing that the Defendants were stealing assets from Chattanooga in furtherance of their scheme to defraud.  William Englund, Sr. was frequently traveling on business connected with his personal career employment during the months of July through November of 2006.

45. During this time, August through November of 2006, Plaintiff Star Waste Services, LLC's payments to Financial Federal Credit were becoming delinquent.  Star Waste Disposal, LLC had been leasing the Financial Federal Credit equipment from Star Waste Services, LLC.  Star Waste Disposal, LLC was shutting down specific sectors of its operations in Chattanooga, Tennessee, in reliance of the anticipated merger with the Defendants; as a result there were no funds available to make payments in a timely manner.  As another part of the Defendants' scheme to obtain the assets of the Plaintiffs, along with fraudulent conversion of the Plaintiffs' equipment, the Defendants made payments to Financial Federal Credit on behalf of Star Waste Disposal, LLC for the trucks and containers they leased from Star Waste Services, LLC.  These payments were not made by Defendant US Waste, LLC or by the nonexistent US Waste Atlanta, LLC (which did not become registered with the State of Georgia until November 3, 2006).  These payments were made by certified checks by Defendant Clarence Emmer, personally (*See Exhibit 9*).

46. These payments were a major part of the Defendants' scheme to deprive the Plaintiffs of all assets.  Payments could evidence ownership rights and along with other actions as described below to convince multiple governmental agencies that would

become involved in this matter that the Defendants' owned the equipment and other assets.

47. Per prior discussions between Mark Englund, William Englund, Sr., and Defendant Clarence Emmer, to the best of Plaintiffs information and belief, if the payments were made to Financial Federal Credit on Star Waste Disposal, LLC's behalf, then they were to be considered personal loans (hence no company checks were used by the Defendants).

48. Supposedly to further preserve the equipment for the proposed merger, but really part of the plot to convince others the Defendants had ownership rights in the Plaintiffs' assets, Defendant Clarence Emmer claimed to have insured the trucks that were financed by Financial Federal Credit. He used a fictitious company, Star US Waste Services, LLC, purportedly a Wisconsin company, contacted a Wisconsin insurance company, and obtained an "insurance binder" for coverage. (*See Exhibit 10*). This was done October 24, 2006, and payment was purportedly made by check sent through the U.S. Postal System. Because this was merely a binder to cover, insurance would not be effective until November 13, 2006. On November 20, 2006, Defendant Emmer called the insurance company and cancelled coverage, telling the agent that the "deal fell through." (*See Exhibit 11*) To the best of the Plaintiffs' information and belief, it was later discovered by the Plaintiffs that the subject insurance agent was not a licensed provider for insurance policies in Tennessee or Georgia. Furthermore, the Defendants fraudulently misrepresented the company name and address, and the truck use area to the insurance provider, and the proposed insurance entitlement coverage, never met the State of Georgia minimum requirements by law. Furthermore, the insurance policy coverage

for its entitlement was not accepted by Financial Federal Credit, subsequently, the so called truck insurance coverage is not a valid claim for the Defendants.

49. On or about November 20, 2006, Mark Englund and William Englund, Sr. discovered that most of the Plaintiffs' equipment that was stored on their 28th Street lot in Chattanooga, Tennessee, was missing. (*See Exhibit 12*)  Checking the 1642 Koppers Road lot in Atlanta showed no evidence of the equipment.

50. The Defendants had been using four (4) of the Plaintiffs' trucks daily, purportedly, in furtherance of the proposed merger, bringing the Plaintiffs' containers in from the field, to the Plaintiffs' storage lot on 28th Street in Chattanooga.  Instead, the Defendants were illegally moving the Plaintiffs' equipment from the Plaintiffs' lot in Tennessee to the Defendants' rural residential property in Georgia.  There was no agreement between the parties for this procedure to have occurred.  Defendant Jason Emmer admitted involvement in the removal, stating that "we" took it to his grandfather's house  (Defendant George Emmer resides at 3938 Stewart Road, Catoosa County, Georgia) where "they" could store it and save Chattanooga lot rental fees. (However, the Defendants were not paying any of that rent involved with the Plaintiffs' lot on 28th Street in Chattanooga.) The Defendant, George Emmer's, Georgia property is actually owned by Defendant Jason Emmer's father, Defendant Dan Emmer, Sr.  On or about that date, November 20, 2006, Mark Englund told Jason Emmer not to take any more containers to the Catoosa County site.  Englund also told Defendant Emmer to call Defendant Clarence Emmer and advise him that the Plaintiffs wanted the attorneys to complete the paperwork for review of the proposed new company. On or about December 7, 2006, the Defendants returned the Plaintiffs' 2000 Mack Rolloff truck.  The 2002

Freightliner residential garbage truck, 1992 Ford Pal-truck (front load container delivery truck), and 1989 Mack-MR front load truck had been previously returned, but none of the containers have been returned.

51. Unbeknown to the Plaintiffs and their Member/Managers, the Defendants had entered a new phase of their scheme. It appeared they have given up on the pretense of forming a new company. Furthermore, as December, 2006 approached; most of the Plaintiffs' containers were now in Georgia where the Defendants had supposedly stored them. Now, they were proclaiming, "It won't work;" "the deal fell through".

52. On December 2, 2006, the Englunds discovered the Defendants had changed the locks to the property at 1642 Koppers Road in Atlanta, Georgia. All of the Plaintiffs' office equipment, files, paperwork, and supplies were gone. Mark Englund called Defendant Clarence Emmer, and Emmer told Englund, "It won't work; I'm not going to Atlanta with you". Emmer also stated, "I put your office stuff in a trailer and I'll get with you later on how to get it". The Plaintiffs' containers on the Koppers Road lot were not gone; however, as the days went by, and around mid-December, 2006, more and more of Plaintiffs assets were missing on a daily basis.

53. On or about December 16, 2006, two of the Plaintiffs' Member/Managers, Mark Englund and William Englund, Sr. called Defendant Clarence Emmer to have a meeting. Defendant Emmer was in town at that time, and he met with them. The Englunds asked for an explanation as to Defendant Emmer's position for not wanting to work towards the finalization of the alliance. He stated that he wanted to get more of his family members involved in his company in Atlanta, and he would want more interest in the company if the Plaintiffs were to be involved. The parties never agreed to any terms

during this meeting, or at any other time that can be perceived as an Agreement for any terms of a contract with the Defendants. Defendant Clarence Emmer stated, "I don't like a lot of paperwork in these things". The Englunds instructed Defendant Emmer that if he wanted the Plaintiffs involvement in a company in Atlanta that he was going to have to get the attorneys involved to draft the paperwork, so the parties could review it before anything could move forward in the alliance to form the proposed company. Again, William Englund, Sr. gave Defendant Clarence Emmer the contact information for the Plaintiffs' attorney. Additionally, Englund asked Emmer for his attorney's contact information, but he responded, "You don't need that. I'll get mine with yours if we plan on doing anything together." Defendant Emmer ended the meeting at the point saying he was in a hurry and had to return home to Milwaukee. Emmer met briefly with Mark Englund before leaving.

54. During these periods, to the best of Plaintiffs' information and belief, the Defendants had been engaging in fraudulent conversion of Plaintiffs' equipment; moving containers from Tennessee to Georgia. Also, the Defendants' began grinding off the manufacturer's identification plates and the welded serial numbers on the waste hauling containers and began repainting, to disguise the equipment in their conversion attempts.

55. Also, in November of 2006, Defendant Clarence Emmer, using the alias of Tony Sanfilipo, and a business card with the fictitious company name of US Waste Network, LLC at the 1642 Koppers Road, Atlanta address, and Defendant Clarence Emmer's personal cell phone number, applied for credit to use a land fill, Safe Guard Landfill, on 6895 Roosevelt Highway Road, Fairborn, Georgia. To the best of the

Plaintiffs' information and belief, as part of their conspiracy, the Defendants planned to use the Plaintiffs' equipment to set up their own business.

56. Also, earlier in August of 2006, the Defendants allege paying for some truck repairs on the Plaintiffs' trucks. Additionally, the Defendants were using the Plaintiffs' trucks during these periods and never produced their own trucks, containers or other equipment for any alliance. The Defendants took it upon themselves to have the trucks repaired to facilitate the transportation for conversion of the Plaintiffs' equipment. It was the Plaintiffs' strict policy to make all truck repairs themselves. Upon further investigation, however, along with truck payments and the so called insurance binder, paying truck repairs was also part of the fraud perpetrated by the Defendants upon multiple governmental agencies to convince them the Plaintiffs' equipment and trucks belonged to the Defendants.

57. In January, 2007, Financial Federal Credit obtained a Writ of Possession for three (3) of Plaintiff Star Waste Services, LLC's trucks that consisted of a 1999 Mack Rolloff, a 2000 Mack Rolloff, and a 2002 Freightliner truck. Prior to this, in August of 2006, the Defendants' took the Plaintiffs' 1999 Mack Rolloff truck to Worldwide Equipment (Mack dealer) for repair. The truck repairs were completed by the Mack dealer on September 29, 2006. To the best of Plaintiffs' information and belief, the dealer called the contact phone number for Defendant Jason Emmer, who had taken the truck there for repair and told him the truck was ready, but the Defendants did not pay the repair bill or make any attempts to pick up the truck. The Mack dealer claims on several other occasions that they advised the Defendant, Jason Emmer, of the amount owing of over fourteen thousand dollars ($14,000.00) for the repair and that the repairs were

26

complete, and the truck was ready for pick up. The truck remained there for almost four (4) months until it was repossessed by Financial Federal Credit in January, 2007. To the best of Plaintiffs' information and belief, during this period, on December 7, 2006, the Defendants' entered the Mack dealer's parking lot where the 1999 Mack Rolloff truck was located and took all the new wheels and tires off, and swapped them with inferior wheels and tires off of another Mack Rolloff truck which they had driven there for that purpose. (*Supra ¶¶* 56)

58. When Plaintiff Star Waste Services, LLC, through money received from Member/Manager William Englund, Sr., paid the Financial Federal Credit loans off, in full, the subject repair bill for the 1999 Mack Rolloff truck was paid through those monies received and Financial Federal Credit, in turn, paid Worldwide Equipment for those subject repairs.

59. Financial Federal Credit obtained the writ of possession on the basis of payment default. The Plaintiffs were not aware of the lack of insurance (that the Defendants were allegedly providing) until notified by a representative of Financial Federal Credit. (*See Exhibit 13*) Three (3) trucks, one hundred sixteen (116) front load containers, forty-one (41) rolloff containers, and five hundred (500) residential carts were to be repossessed by Financial Federal Credit on January 16 and 17th of 2007. However, the Defendants' had the majority of the Plaintiffs' equipment which was secured on loans with Financial Federal Credit and secreted in undisclosed locations. The equipment in the Defendants' possession had been altered without the Plaintiffs' knowledge. Recently, the alterations were discovered by the Plaintiffs and later confirmed by law enforcement authorities. On that date, January 16 and 17, 2007, authorities could only take what the

Plaintiffs had access to. At the Plaintiffs' equipment storage lot was one (1) truck, thirty (30) front load containers, and one (1) rolloff container and no residential carts. Additionally, one (1) truck was at the Englund's residence, and one (1) 1999 Mack rolloff truck was still at the Mack dealer. On March 8, 2007, the Defendant, Clarence Emmer, stated in court, that he had in his possession, "Eighty percent (80%), I would say, or more" (of the Plaintiffs' equipment).

60. During this time frame (October and November, 2006) William Englund, Sr. was still trying to finalize a draft for an agreement for the proposed company with Defendant Clarence Emmer. Englund had already talked with Defendant Emmer on at least eight (8) occasions to get a written draft prepared by their attorneys so the parties could finalize the paperwork.

61. The Defendants' pretense of working towards a mutual agreement to combine equipment and join in a fifty-fifty (50-50) company was wearing thin. They were not contributing any of their trucks or containers for the proposed alliance. But the scheme to wrest all the Plaintiffs' assets from them continued. Cornerstone Community Bank repossessed the 1991 Mack Roll-Off Truck from Star Waste Disposal, LLC on October 10, 2006. (*See Exhibit 14*) Instead of helping to stop the repossession as would have been done if the Defendants' actions were legitimate, Defendants and specifically Defendant Jason Emmer, in furtherance of the Defendants' scheme to defraud the Plaintiffs and take control of all their assets, waited until after the repossession on October 10, 2006, and purchased the truck on November 15, 2006, in the name of US Waste, LLC (a Wisconsin company) at a significant discount, leaving Plaintiff Star Waste Disposal, LLC owing a fifty-four thousand dollar ($54,000.00) deficiency (*Supra P* 59).

(*See Exhibit 15*)  William Englund, Sr. took out a personal loan to pay the debt in full and to preserve the integrity of Star Waste Disposal, LLC and its Member/Manager Mark Englund with Cornerstone.

62. Mark and William Englund, Jr., were facing eviction on their apartment in Atlanta; Defendant Clarence Emmer stopped making payments on the apartment in November, 2006.  William Englund, Sr. took over the responsibility of paying their rent, preventing their eviction in December, 2006.  This was the point when the Plaintiffs realized they had to re-group themselves to continue their businesses successfully.

63. After December of 2006, William Englund, Sr. retired from the engineering profession, cashed out his retirement in early February of 2007, and paid off all five (5) of the Financial Federal Credit loans in full.  (*See Exhibit 16*)  Englund had made plans for refinancing some of the equipment.  He could then reimburse himself for the loan to Plaintiff Star Waste Services, LLC.  Englund had only sixty (60) days to pay back his 401K retirement funds and avoid being taxed for early withdrawal, plus penalty.  This did not happen because of the Defendants' fraudulent schemes where they claimed to be the owners of the equipment, and thus prevented Englund from refinancing.  However, the liens were released and ownership was recorded under American Waste Network, LLC, a Georgia limited liability company formed by the Englunds.  UCC-1s and UCC-3s were recorded and filed with the State of Georgia.  The goal was for American Waste Network, LLC to lease its equipment to the new hauling companies:  Ladies First Waste, LLC and American Waste Services, LLC.

64. Calls to Defendant Clarence Emmer from the Plaintiffs during these periods, were not returned.  On or about February 7, 2007, William Englund, Sr. spotted

29

Defendant Clarence Emmer in a fast food restaurant in Chattanooga. Defendant Clarence Emmer was accompanied by his brother, Defendant Bud Emmer and nephew, Defendant Jason Emmer. Defendant Clarence Emmer avoided Englund's attempts to talk. They ordered food and quickly left the premises.

65. Meanwhile, in February, 2007, the Plaintiffs' Member/Managers were trying to find their equipment which had been disappearing. William Englund, Sr. flew an airplane over North Georgia areas trying to spot the Plaintiffs' equipment. Three (3) sites were discovered. Surveillance by law enforcement began and equipment was tracked. Alterations to the equipment have been documented. Only one (1) enclosed trailer with the Plaintiffs' office equipment and some of the containers were found on Defendant Dan Emmer, Sr.'s property at 3938 Stewart Road in Tunnel Hill, Catoosa County, Georgia. At a later date, it was discovered that these had been moved. Other office equipment and supplies have never been found. Two other sites were found in February of 2007. A dirt pit on a rural wooded lot on Hedrick Road in Catoosa County, Georgia, was used to hide the bulk of the stolen containers, including some of those from Stewart Road. A major site was also found at Richardson Road in Gordon County, in Calhoun, Georgia. The Defendants were spotted transporting the Plaintiffs' equipment to this site and surveillance video has captured the Defendants in those events as well.

66. The Plaintiffs' Member/Managers filed two incident reports with the Catoosa County Sheriff's office—one on February 17, 2007, and a second on March 14, 2007. In Catoosa County on February 20, 2007, in Detective Terrence Kelly Holcomb's office, William Englund, Sr. called Defendant Clarence Emmer, and they spoke by phone on three separate occasions, and Englund demanded the return of Plaintiffs' equipment.

Defendant Emmer denied any knowledge of the whereabouts of the equipment. All of the phone conversations were similar in nature with William Englund, Sr. demanding Plaintiffs' equipment and Defendant Clarence Emmer denying knowing the whereabouts. Furthermore, Defendant Emmer never mentioned that the equipment was his or that it belonged to US Waste Atlanta, LLC, or that the Plaintiffs or Englund were any part of any company affiliation with Emmer, as he did in his lawsuit filed on March 2, 2007 in Hamilton County, Tennessee. (*Supra ¶¶* 65) He just kept denying knowledge of the location of the equipment.

67. Law enforcement officials investigated in preparation to file criminal charges but, after February 22, 2007, would not pursue criminal action after the Defendants produced copies of what they alleged to be three (3) legal contracts of ownership of the Plaintiffs' equipment. On March 2, 2007, a civil lawsuit was filed in Hamilton County Chancery Court, Chattanooga, Tennessee (US Waste Atlanta LLC v. Mark Englund and William Englund, CV 07-0204, Part II). It asked for a Writ of Possession, for Injunctive Relief and alleged breach of contract and conversion. This lawsuit alleged that a written contract had been entered into between Star Waste Disposal (and allegedly signed by Mark Englund) and US Waste Atlanta, LLC (and signed by Clarence Emmer). Another contract was allegedly entered into between Star Waste Services (and allegedly signed by William L. Englund) and US Waste Atlanta, LLC (and signed by Clarence Emmer). The lawsuit further alleged that these contracts were signed on August 25, 2006. There was a third alleged contract (handwritten version) dated August 23, 2006 by Jason Emmer and purportedly signed only by Mark and William Englund, Sr. and not Clarence Emmer or US Waste Atlanta, LLC. The lawsuit alleged breach of contract and conversion. An

emergency restraining order was issued *ex parte* restraining Mark Englund and William Englund from "selling, using, concealing, transferring, and otherwise disposing of the following described property…" and listed three specific trucks, ninety (90) plus roll-off containers and two hundred (200) plus front load containers. No sizes or identifying serial numbers were listed in the Hamilton County Chancery Court Complaint or the three (3) alleged contracts. (*See Exhibit 17*)

68. Defendant Clarence Emmer (through US Waste Atlanta, LLC) in his lawsuit alleged that the Plaintiffs' equipment was his, but Plaintiffs had recently confirmed that the Defendants had been fraudulently altering and converting Plaintiffs' equipment. Even after the filing of the lawsuit, this illegal conversion and alteration was continuing. The Koppers Road facility in Atlanta and the dirt pit in the woods near Defendant Dan Emmer, Jr.'s property was being used as a "chop shop". Grinders were used by Defendants to illegally remove identifying serial numbers; this equipment was being painted to disguise their illegal actions. Evidence of paint, paint cans and equipment and grinding tools were found. This was also occurring at 3938 Stewart Road in Georgia and documented by law enforcement surveillance of the equipment.

69. To the best of Plaintiffs' information and belief, some of the paint was purchased at Sherwin-Williams in Ft. Oglethorpe, Georgia, and paid for by Defendant Jason Emmer with credit cards. The Plaintiffs are aware of three (3) separate occasions: January 9, 2007, with Master Card (xxxx-xxxx-xxxx-0615) using the fictitious name of US Waste, LLC, at 1266 W. Paces Ferry Rd., Ste. 550, Atlanta, Georgia, as purchaser; on January 17 and 18, 2007, with Visa (xxxx-xxxx-xxxx-9334) and using the purchaser name of Perfection Painting Corporation, 575 S. Dunvegan Dr., New Berlin, Wisconsin.

32

Defendant Jason Emmer was the cardholder on these three (3) occasions. To the best of Plaintiffs' information and belief, other tools were shipped from Wisconsin. Additionally, Sherwin Williams has a large quantity paint order awaiting pick-up from the Defendants.

70. On February 21, 2007, Defendant Dan Emmer, Jr., was seen in Atlanta transporting two (2) stolen rolloff containers. On that day, Mark and William Englund, Sr. spotted him and called authorities with their cell phone. Emmer spotted the Englunds and drove through red lights, up on sidewalks, and at high speeds through the middle of downtown Atlanta. The Englunds followed, keeping in touch with law enforcement. The police chase ended right in front of the Fulton County Courthouse in Atlanta, Georgia. Defendant Dan Emmer, Jr. was charged with felony theft. The Mack Rolloff truck he was driving was impounded; the equipment containers he was carrying were held as evidence, and Emmer's jacket with paint stains on it was kept as evidence. The truck Dan Emmer, Jr., was driving was not registered properly, had an invalid tag, no insurance certificate, and had two (2) different fraudulently altered Department of Transportation (DOT) numbers on the side. Identifying decals on the doors read: US Waste Network, LLC.

71. To the best of Plaintiffs' information and belief, Defendant Dan Emmer, Jr., called his uncle, Defendant Clarence Emmer, to bond him out. Clarence Emmer faxed copies of three (3) document contracts to Fulton County the next day to prove his ownership of the equipment and to try to get Dan Emmer, Jr., out of jail. (*Supra P* 67) This was the first time William Englund, Sr. or any of the Plaintiffs' other Member/Managers knew of the existence of these three (3) document contracts. Faced

with Plaintiffs' valid UCC's and paperwork that William Englund, Sr. presented to the Fulton County Assistant District Attorney, the charges were not dropped on Defendant Dan Emmer, Jr., and the matter is still pending (Case # 07 SC 54279).

72. Defendant Dan Emmer, Jr., was arrested on February 21, 2007, and a civil lawsuit was filed against the Englunds on March 2, 2007.

73. The firm of Miller & Martin, PLLC ("Miller & Martin") of Chattanooga, Tennessee, represents US Waste Atlanta, LLC in that lawsuit. Defendant Clarence Emmer had used them before—in a former lawsuit filed in Chancery Court.

74. The herein Defendant, Clarence Emmer, used those same three (3) document contracts that were faxed to Fulton County on February 22, 2007 for his civil lawsuit filed against the Englunds on March 2, 2007. The documents were purported to be contracts entered into between Clarence Emmer, and/or US Waste Atlanta, LLC and Mark Englund and William Englund, Sr., individually, to "give" the herein Plaintiffs' assets to the herein Defendants. One of the documents is dated August 25, 2006, and as related by Clarence Emmer in his March 8, 2007, testimony in the Chancery Court of Hamilton County, Tennessee, in response to who prepared the typewritten document and where, he stated, ..."Mark Englund did"...prepared on "his computer at his office." On that date, Mark Englund had already vacated the property; the building was empty. They had been evicted in a dispute over the time in the remaining lease term and given until noon on August 24th, 2006, to vacate. (*See Exhibit 18*) There were no computers or printers in the office on August 25, 2006. Furthermore, all of the office furnishings and equipment had been moved from that building by the date ending August 22, 2006.

34

75. Miller & Martin were involved in two other parts of the Defendants' schemes. Miller and Martin represented the landlord who evicted Plaintiff Star Waste Disposal, LLC from 2103 Tinsley Place, Chattanooga, Tennessee. Correspondence was received from Miller & Martin that the property must be vacated by noon on August 24th, 2006. One of the Plaintiffs' Member/Managers, Mark Englund, initially attended an arbitration/mediation session at Miller & Martin in an effort to try to resolve the matter. Several Miller & Martin attorneys were present. Furthermore, when First Federal Leasing repossessed the Otto Environmental "red residential" carts from Plaintiff Star Waste Disposal, LLC, Miller & Martin represented First Federal Leasing in that incident. The Defendants in the instant lawsuit, including Defendant Clarence Emmer, fraudulently misrepresented ownership of these Otto "red residential" carts claiming he owned the carts as: US Waste (I or we) Clarence Emmer (Person or Firm Making Sale), P.O. Box 371127, Milwaukee, Wisconsin 53237, and sold them to another waste hauling company, Allied Waste of Chattanooga, also known previously as (BFI). The contract "Bill of Sale" with Allied Waste states that Defendant Emmer sold one thousand (1,000) residential carts, more or less, for $18.00 each. (*See Exhibit 19*)

76. The Defendants not only used Miller & Martin to further their scheme to defraud and deprive the Plaintiffs of all assets, they also used the television media. On the day of the hearing on March 8, 2007, in Hamilton County Chancery Court, in which WRCB TV Channel 3 Eyewitness news had permission to film the hearing, on the temporary restraining order issued March 2, 2007, Defendant Clarence Emmer spoke to reporter Bill Markham. Emmer continued his pattern of fraud when he stated that he had to take over for the Plaintiffs here in Chattanooga; that they agreed to his acquisition of

the companies, and that all they ever wanted was the money. "But they've done this to numerous people," Emmer stated.

77. Allied Waste of Chattanooga (BFI) was also included in the Defendants' scheme. Their General Manager, Joe Salamone, spoke to Channel Three's Bill Markham and said he had received a call from a fellow in Wisconsin offering to give him the Plaintiffs' customer list and "work out a deal for picking up the residential garbage cans". He informed Salamone that he had "purchased all the assets from Star Waste…"

78. The restraining order was continued by the Chancellor, and the parties were told to leave the equipment where it was and to maintain the status quo. The Chancellor felt the contracts needed to be tested for authenticity.

79. Counsel from Miller & Martin spoke to Channel Three's Bill Markham, and told him the judge said the equipment was to remain in place. Yet his client and the other Defendants continued to move equipment. To the best of Plaintiffs information and belief, some equipment has been sold.

80. Document experts obtained by the Plaintiffs have proven the subject document contracts to be fraudulent. (*See Exhibit 20*)

81. On April 18, 2007, Plaintiff, Star Waste Services, LLC's Member/Manager William Englund, Sr., was in a parking lot across the street from the newly identified Defendants' storage lot on 3101 Alton Park Road. He was on public property, not on the Defendants' property. Defendant Dan Emmer, Jr., came down the street in a big Mack rolloff truck which purportedly belongs to US Waste, LLC, a Wisconsin company. The identification on the doors of the truck had company decals which show US Waste Network, LLC. Dan Emmer, Jr., spotted Mr. Englund and stopped in the middle of the

street and backed up and blocked all legal exits so Englund could not exit the parking lot. That involved Emmer driving the truck backwards and forwards, over and over again. It also appeared to Mr. Englund that Defendant Emmer was going to leave his vehicle and attack him. Mr. Englund drove over the grass and down a sidewalk and through the front yard of a business office to escape danger and left the area.

## UNITED STATES CODE VIOLATIONS

82. The Plaintiffs realledge and restate Paragraphs 1 through 81 .

83. **18 U.S.C. §1341. Mail Fraud. "Whoever, having devised or intending to devise any scheme or artifice to defraud,...places in any post office ....to be sent by the Postal Service..." commits mail fraud.**

84. To the best of the Plaintiffs' knowledge, information and belief, money (albeit in the form of a check from Defendant US Waste, LLC) to pay the binder on the so-called insurance policy, was mailed through the US Postal Service in Wisconsin to the insurance agent who provided the binder on equipment belonging to Plaintiff Star Waste Services, LLC. To the best of the Plaintiffs' knowledge, information and belief, a phone call, an e-mail or a fax, or a letter sent through the US Mail Service, was sent by the Defendants to the insurance agent cancelling the policy and confirming that the "deal fell through." This was in furtherance of the Defendants' scheme to take, or steal, or illegally in any other way, the assets of the Plaintiffs. Cashier's checks were done on behalf of Defendant Clarence Emmer and the checks, to the best of the Plaintiffs' knowledge, information and belief, were mailed through the US Postal Service to Financial Federal Credit in furtherance of the Defendants' scheme to defraud the Plaintiffs and to defraud other

essential non-party insurance companies, banks, and financial lending institutes into believing his scheme. Equipment was mailed from Wisconsin to Georgia and was used in furtherance of the act of concealing the serial numbers of stolen equipment from Plaintiff Star Waste Services, LLC, from law enforcement, creditors (lien holders), and from others. With information and belief, the Plaintiffs assert that the Postal Service was used more than these instances detailed above in furtherance of the conspiracy to defraud the Plaintiffs.

85. **18 U.S.C. §1342. Fictitious name or address. "Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in Section 1341 or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address..."violates this section of the code.**

86. By use of the fictitious company Star US Waste Services, LLC, as mentioned above, the Defendants willfully conspired and intended to defraud the Plaintiffs and take all the assets. (*Supra P* 84)

87. **18 U.S.C. § 1343. Fraud by wire, radio, or television. "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses....transmits or causes to be transmitted by means of wire, radio, or television....in interstate...commerce, any writing, signs, signals, pictures or sounds for the purpose of executing such scheme..." violates this section.**

88. There were phone conversations between one of Plaintiff Star Waste Services, LLC's Member/Mangers, William Englund, Sr., and Defendant Clarence Emmer to

discuss this alleged merger, even though Defendant Emmer never intended to merge. There were phone conversations between Plaintiff Star Waste Disposal, LLC's Member/Manager Mark Englund and Defendant Clarence Emmer to discuss this alleged merger when Defendant Emmer knew there would be no merger. These conversations were as a result of the Defendants' scheme to defraud the Plaintiffs. To the best of Plaintiffs' information and belief, when Dan Emmer, Jr., Defendant, was arrested in Fulton County, Georgia, on February 21, 2007, he called his uncle, Defendant Clarence Emmer, to bail him out for charges of felony theft of the Plaintiffs' property. The fraudulent documents were faxed by Defendant Clarence Emmer's Atlanta attorney to law enforcement in Fulton County, Gordon County, Catoosa County, and Dekalb County, Georgia, and this was the first time the fraudulent document contracts were seen by the Plaintiffs.

89. These fraudulent contracts numbered three (3) in nature. One was hand-written and did not contain the signature of any of the Defendants. The other two were typewritten, but upon Plaintiffs' knowledge, information, and belief, the body of the contracts and the signature block portion of US Waste Atlanta, LLC was printed with *toner technology* and the bottom signature block portion of the Plaintiffs' were printed with *ink jet technology*. To the best of Plaintiffs' knowledge, information and belief, said signatures were obtained by the Defendants by theft of the Plaintiffs' pre-signed blank papers designated for customer correspondence when they stole them from the Plaintiffs' office supplies. (*Supra* ¶¶ 52) The Assistant District Attorney in Fulton County, Georgia, determined the documents were fraudulently created and did not dismiss the charges against Defendant Dan Emmer, Jr.

90. The March 8, 2007, Chancery Court hearing whereby Defendant US Waste Atlanta, LLC and thus, the individual Defendants, requested and got a restraining order that was televised. Defendant Clarence Emmer spoke to Channel Three Eye-Witness reporter Bill Markham and told him the following: "They were good at one thing, billing, that's it. They made sure they sent the bill. They weren't good at anything else...And we made, uh, $36,000.00, I did in payment on three of 'em, spent thousands of dollars repairing 'em and, uh, and the Englunds came in and grabbed the trucks; said they weren't going in business with us any longer....Yes, we have signed contracts...But they've done this to numerous people." On a prior date (not yet known to the Plaintiffs), the General Manager of Allied Waste of Chattanooga (BFI), Joe Salamone, told reporter Bill Markham that, "I got contacted from a gentleman out of Wisconsin that owns a garbage company. And, uh, he called me and informed me that he had purchased all the assets from Star Waste and he would be here in the next couple of weeks and he offered to uh give me the customer's lists and work out a deal with picking up the residential garbage cans." To the best of the Plaintiffs' knowledge, information and belief, this individual was Defendant Clarence Emmer. To the best of the Plaintiffs' information and belief, those residential garbage cans (carts) belonged to Plaintiff Star Waste Disposal, LLC. Defendant Emmer sold them to Allied Waste of Chattanooga d/b/a BFI . These two examples can be found on videos that the television station made and played on the air in their nightly news spots. The details given by Defendant Emmer to Bill Markham that Joe Salamone said he had been told by Emmer were fraudulent and were intended to continue the conspiracy to illegally take over the Plaintiffs' business and all of its assets. This is wire fraud.

40

# MAIL AND WIRE FRAUD CHART

| Type of Communication | Date | From | To | Regarding |
|---|---|---|---|---|
| Telephone | 1/06 | Clarence Emmer | William Englund, Sr. | • Clarence Emmer and family members moving to North Georgia<br>• Has researched Georgia area for new business venture location<br>• Emmer stated, "I can get my equipment to Atlanta pretty quick, but we can be ready to start moving yours right away, while I'm moving mine there".<br>• Can be ready to do business by early March<br>• Englund gives contact information for his attorney |
| Telephone | 3/06 | Clarence Emmer | Mark Englund | • Calling about plans and progress for the proposed venture |
| Telephone | 5/06 | Clarence Emmer | Mark Englund | • Emmer calls and says he will be in Chattanooga soon to move forward with planning of new venture |
| Telephone | 6/06 | Clarence Emmer | Mark Englund | • About coming to a final agreement and to abate further conversations with potential buyers |
| Telephone | 6/06 – 7/06 | Clarence Emmer | Mark Englund<br><br>William Englund, Sr. | • Numerous discussions about the finalization of paperwork<br>• Attorneys will be able to get together soon |
| Mail | 9/3/06 | Clarence Emmer | Financial Federal Credit | • Two (2) cashier's checks on Plaintiffs' equipment from fictitious company "Star Waste" |
| Mail | 10/11/06 | Clarence Emmer | Financial Federal Credit | • Two (2) cashier's checks on Plaintiffs' equipment from fictitious company "Star Waste" |
| Mail | 10/24/06 | Clarence Emmer | Veitenhaus Insurance Services | • To obtain binder on Plaintiffs' trucks that were financed by Financial Federal Credit |

41

| | | | | through fictitious company, Star US Waste Services, LLC |
|---|---|---|---|---|
| Mail | 11/13/06 | Clarence Emmer | Financial Federal Credit | • Cashier's check on Plaintiffs' equipment from fictitious company "Star Waste" |
| U.S. Postal Service | 11/06 | Clarence Emmer | Safe Guard Landfill | • Emmer uses alias of Tony Sanfilipo to obtain credit to use a landfill<br>• Emmer requests to be addressed by fictitious, false, or assumed title, name, or address |
| U.S. Postal Service | 11/1/06 | Clarence Emmer | J & E Real Estate | • Emmer uses alias of Jay San Filipo to lease the Koppers Road facility<br>• Emmer requests to be addressed by fictitious, false, or assumed title, name, or address |
| Telephone | 11/20/06 | Clarence Emmer | Veitenhaus Insurance Services | • Called insurance company to cancel coverage stating that the "deal fell through" |
| Telephone | On or about 12/3/06 | Clarence Emmer | Mark Englund | • After Englund discovers being locked out<br>• Emmer says, "I've put your office stuff in a trailer and I'll get with you later on how to get it". |
| Wire | 1/9/07 | Jason Emmer | Sherwin Williams | • Using Mastercard of US Waste, LLC to buy paint products |
| Wire | 1/17/07 | Jason Emmer | Sherwin Williams | • Using Visa card of Perfection Painting Corporation to buy paint products |
| Wire | 1/19/07 | Jason Emmer | Sherwin Williams | • Using Visa card of Perfection Painting Corporation to buy paint products |
| Telephone | 2/20/07 | William Englund, Sr. | Clarence Emmer | • Call from Detective Holcomb's office to demand the return of Plaintiff's equipment.<br>• Emmer denies knowledge of whereabouts |
| Telephone | 2/20/07 | William Englund, Sr. | Clarence Emmer | • Call from Detective Holcomb's office to demand the return of Plaintiff's equipment<br>• Emmer denies knowledge of |

| | | | | whereabouts |
|---|---|---|---|---|
| Telephone | 2/20/07 | William Englund, Sr. | Clarence Emmer | • Call from Detective Holcomb's office to demand the return of Plaintiff's equipment<br>• Emmer denies knowledge of whereabouts |
| Facsimile | 2/22/07 | via Clarence Emmer | Dekalb County, Georgia Police | • Copies of (3)fraudulent documents purporting to be contracts between Defendant and Plaintiffs<br>• Faxed by Emmer's Atlanta attorney |
| Facsimile | 2/22/07 | via Clarence Emmer | Fulton County, Georgia Police | • Copies of (3)fraudulent documents purporting to be contracts between Defendant and Plaintiffs<br>• Faxed by Emmer's Atlanta attorney |
| Facsimile | 2/22/07 | via Clarence Emmer | Catoosa County, Georgia Police | • Copies of (3)fraudulent documents purporting to be contracts between Defendant and Plaintiffs<br>• Faxed by Emmer's Atlanta attorney |
| Facsimile | 2/22/07 | via Clarence Emmer | Gordon County, Georgia Police | • Copies of (3)fraudulent documents purporting to be contracts between Defendant and Plaintiffs<br>• Faxed by Emmer's Atlanta attorney |
| Television | 3/8/07 | Clarence Emmer | Chattanooga area listening audience | • Stating he has signed contracts<br>• Stating the Englunds came in and grabbed the trucks<br>• Stating they've done this to numerous people<br>• Destroy the public's perception of Plaintiffs |

91. **18 U.S.C. § 1349. Attempt and Conspiracy. "Any person who attempts or conspires to attempt to commit any offense under this Chapter..."** shall be subject to the same penalties.

92. Not only did Defendant Clarence Emmer use Defendant US Waste, LLC; he used US Waste Atlanta, LLC and US Waste Network, LLC ; he used a fictitious company Star US Waste Services, LLC, and used his associates in fact in furtherance of his scheme to defraud: Defendant Dan Emmer, Sr., in possession of stolen property; Defendant George Emmer's association in fact with the others; Defendant Jason Emmer, Defendant Bud Emmer and Defendant Dan Emmer, Jr., and in association in fact with others, in transporting stolen goods through interstate commerce and possibly others not known to the Plaintiffs; in engaging in concealment of stolen property, and more.

93. **18 U.S.C. §1503, 1510, and 1511. Obstruction of Justice, Obstruction of Criminal Investigations, and Obstruction of State or local law enforcement.**

94. The Defendants violated all of these sections as well. Faxing fraudulent contracts to try to abate criminal proceedings for Defendant Dan Emmer, Jr.; moving equipment; hiding equipment; and altering the equipment by grinding off serial numbers and repainting would obstruct law enforcement officials trying to identify stolen equipment; (*Supra ¶¶* 67-71) using Miller & Martin as a enterprise to legitimize Defendants' fraudulent activities perpetrated a fraud upon the Court – all of the predicate acts were part of Defendants' scheme to illegally gain control over Plaintiffs' assets.

95. **18 U.S.C. § 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises.**

44

96. The violations of this section are discussed below under the RICO section.

(*See ¶¶* 101, 108(d))

97. **18 U.S.C. §1621. Perjury.**

98. Defendant Clarence Emmer, representing the enterprise US Waste Atlanta,

LLC in a civil Chancery Court hearing committed numerous counts of perjury:

<u>DEFENDANT CLARENCE EMMER'S PERJURY ON MARCH 8, 2007</u>

<u>HAMILTON COUNTY CHANCERY COURT</u>

(Taken from Transcript of Testimony)

<u>Violation Of:   18 U.S.C. §1621</u>

| | | |
|---|---|---|
| | | **Answers Committing Perjury Ref:   #1** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |
| In response to a question of how the parties joined together: | | |
| Answer: (**Clarence Emmer**) – "*Approximately around August this year the Englunds, through my brother ... I entered an agreement in August about taking over their company and equipment…They contacted me.*" | | |
| | | **Answers Committing Perjury Ref:   #2** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |
| Questions: (Mr. Townsend) – "*And what did they request of you*"? | | |
| Answer: (**Clarence Emmer**) – "*They wanted me to go in business with them. They had no trucks running. They wanted me to take over the company, help them, go into a partnership with them*". | | |
| | | **Answers Committing Perjury Ref:   #3** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |
| In response to the forming of the written contracts: Re the handwritten copy: | | |
| Answer: (**Clarence Emmer**) – "*This was prepared because their computer wasn't working by my nephew –and they were out of ink or something – by my nephew, Jason Emmer's handwriting*". | | |
| | | **Answers Committing Perjury Ref:   #4** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |
| In response to the forming of the written contracts: Re the handwritten copy: | | |
| Answer: (**Clarence Emmer**) – "*My nephew did the writing…because the Englund computer quit working…It wasn't working and we handed it and Mark made it work a little bit…We were all sitting there and we were all adding things.*" | | |

45

| | | **Answers Committing Perjury Ref: #5** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to a question whether Clarence Emmer was there when the document was signed:

| Answer: (**Clarence Emmer**) – *"Yes, I was." "Yes, I did"* (witness Mark and William Englund signed their names). |
|---|

| | | **Answers Committing Perjury Ref: #6** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Referring to a document shown:

| Answer: (**Clarence Emmer**) – *"That's the final agreement for the Englund's and our partnership. This is the one signed by William Englund stating to turn over his containers, the tools, the customer list and stuff U.S. Waste Atlanta LLC, including three trucks…Yes, I was (there when that agreement was signed)".* |
|---|

| | | **Answers Committing Perjury Ref: #7** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Response to another document shown:

| *"This is an agreement signed between me and Mark Englund. It's an agreement stating that he is to turn over his roll off containers, front load containers, basically all of his assets, his customer list, and become an at will employee of U.S. Waste Atlanta…Mark Englund (prepared that document)".* |
|---|

| | | **Answers Committing Perjury Ref: #8** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to who prepared the agreement and how it was prepared:

| Answer: (**Clarence Emmer**) – *"His computer at the office…Yes, I was (there when it was prepared)…Yes, I was (there when it was signed)…Yes, it was (made in my presence)".* |
|---|

| | | **Answers Committing Perjury Ref: #9** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Response to a document shown:

| Answer: (**Clarence Emmer**) – *"This is – William Englund provided this for the valuation of the trucks for when we were doing the contract."* |
|---|

| | | **Answers Committing Perjury Ref: #10** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Regarding the ownership of US Waste Atlanta, LLC:

| Answer: (**Clarence Emmer**) – *"William Englund, Mark Englund and Clarence Emmer, and US Waste Milwaukee owns the 80 percent".* |
|---|

| | | **Answers Committing Perjury Ref: #11** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Regarding the conditions of the Plaintiffs' truck and the companies:

| Answer: (**Clarence Emmer**) – *"No, Nothing was running…That's why I was brought in. Plus, they didn't have any place to dump the stuff…They had no money to repair anything…They had checks bouncing. They couldn't buy gas anywhere".* |
|---|

| | | **Answers Committing Perjury Ref: #12** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Regarding insurance on the trucks:

| Answer: (**Clarence Emmer**) – *"That's where I put insurance on the three vehicles from* |
|---|

| | | |
|---|---|---|
| *US Waste Milwaukee. I still showed them under Star because they were still financed under the former Star Waste, and I insured them under Star US Waste Services*". | | |
| | | **Answers Committing Perjury Ref:  #13** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Regarding the servicing of the Plaintiffs' customers:

Answer: (**Clarence Emmer**) – "*They were all quitting (the customers)...Because the Englunds never picked them up...*".

Question: Did the Englunds have the ability to pick up their garbage?

Answer: (**Clarence Emmer**) – "*No, they did not...They didn't have a truck, nor did they have any place to dump it.. They just stopped picking them up. Left hundreds of commercials out there with no service*".

| | | |
|---|---|---|
| | | **Answers Committing Perjury Ref:  #14** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Question concerning picking up the containers:

Answer: (**Clarence Emmer**) – "*They're not going anywhere. They're in storage and the Englunds know that. I told them that they were in storage*".

| | | |
|---|---|---|
| | | **Answers Committing Perjury Ref:  #15** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to a question as to whom Mark Englund was working for:

Answer: (**Clarence Emmer**) – "*U.S. Waste*".

| | | |
|---|---|---|
| | | **Answers Committing Perjury Ref:  #16** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to the question:  "*So at the time these contracts were ever done there was still no U.S. Waste Atlanta, LLC; correct*"?

Answer: (**Clarence Emmer**) – "*No. There was U.S. Waste Atlanta at the minute we signed these contracts and we did this deal. The LLC was done right afterwards*".

| | | |
|---|---|---|
| | | **Answers Committing Perjury Ref:  #17** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to the question: "*And do you have any proof to show where the Englunds indeed own ten percent of US Waste Atlanta*"?

Answer: (**Clarence Emmer**) – "*Yes, I do, these contracts...(Bill)...asked me not to put it in there as a ten percent owner because he was working for another company called Motion Industries and he didn't want anyone to know that he owned ten percent*".

| | | |
|---|---|---|
| | | **Answers Committing Perjury Ref:  #18** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Questions:  "*And this was for 10 percent of the company that has no money, correct? So...for 10 percent of some company, he was going to go ahead and give you all of his equipment and his trucks, which by your own estimation is about 65,000; correct*"?

Answer: (**Clarence Emmer**) – "*Yes*".

| | | |
|---|---|---|
| | | **Answers Committing Perjury Ref:  #19** |
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Questions: "*Two hundred front loaders, how much are those worth*"?

Answer: (**Clarence Emmer**) – "*Two to Three hundred used*".

Questions: ...he would go ahead an pay the lien, any liens on the equipment?

Answer: (**Clarence Emmer**) – "*Yes.*"

47

| | | **Answers Committing Perjury Ref: #20** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

| Questions: Regarding the equipment: |
|---|
| Answer: (**Clarence Emmer**) – "*I haven't stolen them because we're partners and we have this agreement*". |

| | | **Answers Committing Perjury Ref: #21** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

| In response to a question concerning ownership of the trucks: |
|---|
| Answer: (**Clarence Emmer**) – "*No, I owned the trucks.*" |
| In response to the question: "So, they're allowed to have the trucks?" |
| Answer: (**Clarence Emmer**) – "*No, they weren't allowed. The LLC was supposed to keep the trucks*". |
| Question: "*But they're partners…?*" |
| Answer: (**Clarence Emmer**) – "*Twenty percent. They were just acting insane, threatening and doing things, stealing stuff out of the office*". |

| | | **Answers Committing Perjury Ref: #22** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

| In response to questions regarding the status of US Waste Atlanta: |
|---|
| Answer: (**Clarence Emmer**) – "*No, it's not a shell. We rented a building in Atlanta. We got a landfill in Atlanta. We had trucks in Atlanta. It would have—it would have continued except the Englunds came and grabbed the trucks and they decided to go around telling lies*". |

| | | **Answers Committing Perjury Ref: #23** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

| In response to the question regarding why the serial numbers are being ground off the containers: |
|---|
| Answer: (**Clarence Emmer**) – "*They are not, not by me. The Englunds removed all the former Star Waste stickers off of it, and, plus, some of their ex-employees working for the new LLC. They know that. Mark Englund himself and Bill Englund scraped some of the names off*". |

| | | **Answers Committing Perjury Ref: #24** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

| In response to questions concerning taking over a business: |
|---|
| Answer: (**Clarence Emmer**) – " *… but he had wrote two checks for $14,000 that I covered*". |
| Questions: "*Those are on the trucks that you wrote – that's the agreement for the trucks*"? |
| Answer: (**Clarence Emmer**) –" *Right, but he said that he had wrote two checks in advance that had bounced and that he needed them done.* |

| | | **Answers Committing Perjury Ref: #25** |
|---|---|---|
| | | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

| In response to questions concerning stolen containers: |
|---|
| Answer: (**Clarence Emmer**) – "*…Mr. Englund called me and he says, where is all the containers you stole from me in Chattanooga? I go, what are you talking about? He said, the containers from Ringgold and Atlanta. I said, your son brought the containers there* |

48

*with us… he called the Catoosa County Police and told them that I had stole all the containers and put them there. And I told the police that he was lying and that we had an agreement and that he knew they were there, we were not hiding them, and that he had no right to touch them. I didn't want him to take the cans. The LLC owned them. Why would I give them to him just because he changes his mind? He has done this in the past… He's done it with a guy called – oh his name is – it's a company called All Waste Disposal. They had an agreement with him, too, and he said they didn't have one with him. His name is Craig Foxworth… I found that afterwards that he had cheated Craig Foxworth".*

|  |  | **Answers Committing Perjury Ref:  #26** |
|  |  | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to questions as to whether Susan Emmer ever called him:

Answer: (**Clarence Emmer**) – *"She did call me and ask me to make one of the payments, asked me when I was going to make one… she said Financial Federal had called her and just asked when the payment was going to be made, and I sent it in".*

|  |  | **Answers Committing Perjury Ref:  #27** |
|  |  | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In regards to Emmer trying to diffuse a criminal matter in Georgia:

Answer: (**Clarence Emmer**) – *"There's no criminal matter in Georgia, because I had control of the containers.  How can I steal containers that I have?"*

|  |  | **Answers Committing Perjury Ref:  #28** |
|  |  | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to questions regarding trucks:

Answer: (**Clarence Emmer**) – *"We went into business together. Mr. Englund stated himself that if we didn't do something that he was finished… When I get my trucks back, I will pay the balance and the Englunds will still own 20 percent of this stuff…No, I was paying for the trucks.   The other stuff they were going to sell."*

|  |  | **Answers Committing Perjury Ref:  #29** |
|  |  | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to questions concerning taking over other companies before:

Answer: (**Clarence Emmer**) – *"And everyone has made money".*

|  |  | **Answers Committing Perjury Ref:  #30** |
|  |  | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

In response to a question:  *"They decided to fight you…"*

Answer: (**Clarence Emmer**) – *"No, that's not it. They're mad because I – really, they're just mad because I put Mark on hold…They always change things. Everyday it's a different thing".*

|  |  | **Answers Committing Perjury Ref:  #31** |
|  |  | Sworn Testimony Under Oath in Violation of **18 U.S.C. §1621** |

Questions:  *"And these front loaders and other containers that are in your possession, how in the heck did you get them"?*

Answer: (**Clarence Emmer**) – *"The Englunds and us delivered them. I didn't steal them".*

99. **18 U.S.C. § 2312 and 2313. Interstate transportation of stolen motor vehicles, and Interstate transportation of stolen property.**

100. The Defendants moved stolen trucks back and forth between Tennessee and Georgia. Equipment taken from Tennessee was moved to Georgia and some or all have now been moved back to Tennessee since the date of March 2, 2007. Using these stolen trucks, the Defendants willfully and maliciously deprived Plaintiffs of their assets and moved equipment stolen from the Plaintiffs. Most of these pieces of equipment become part of a motor vehicle and are used to transport waste. (*Supra ¶¶* 69 - 70)

# SCHEDULES

In the following schedules, as shown in Paragraph 101 below, the lien holders are Financial Federal Credit, Inc. (FFCI), Center Capital Corporation (CCC), Federated Capital Services (FCS), Otto Environmental (OTTO), First Federal Leasing (FFL), and there is equipment that is owned personally by Susan H. Englund and William L. Englund, Sr. (WLE/SHE), and Englund Brothers Company, Inc. (EBC) that is being leased by the Plaintiffs.

101. The following schedules (**SCHEDULE - 1**, **SCHEDULE – 2, SCHEDULE – 3 & SCHEDULE - 4**) state the identification and quantity of stolen equipment by the defendants. The stolen equipment listed in **Schedule - 1** & **Schedule – 4** were used both to aid in the transportation of other equipment in **Schedule – 1** as well as **Schedule - 2** across state boundaries. **Schedule – 3** equipment is missing and their locations are unknown. As of March 2007 the locations of the converted equipment were as follows:

**Violation 18 U.S.C. § 2312 and 2313**

| Destinations: |
| --- |

**Site 1 -Calhoun, Ga.** -A vacant facility that was, to the best of the Plaintiffs' knowledge, information and belief, leased by Clarence Emmer aka "Jay Emmer" on or about February 15, 2007 in Gordon County.

**Site 2 –Fulton County, Ga.** –The location that the (2) stolen containers were taken to when Dan Emmer, Jr. was taken into custody for felony theft. Impound yard of S&W Towing.

**Site 3 –Ringgold, Ga.** Personal residential real estate property that is owned by the Defendants in Catoosa County.

**Site 4 –Ringgold, Ga.** A Non-Operating, secluded dirt pit.

**Site 5 –Atlanta, Ga.** A facility leased by Clarence Emmer under the alias "Jay Sanfilipo"

**Site 6 – Chattanooga, Tn.** An industrial location on Alton Park Road

## Schedule 1

| Transportation Of Stolen Property: Ref #1 | | | | |
| --- | --- | --- | --- | --- |
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd Enclosed Receiver Box | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number:** | *****(Found) Calhoun, Ga.***** | | | Found With Wheels, Rims, Tires And Multiple Front Loads Inside |
| **RC1**<br>**RC1-40** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #2 | | | | |
| --- | --- | --- | --- | --- |
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd Enclosed Receiver Box | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial** | *****(Found) Calhoun, Ga.***** | | | This Enclosed Receiver Box Is Loaded W/ Front |

| Number: RC2 RC2-40 | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | Loader Containers |
|---|---|---|

| Transportation Of Stolen Property: Ref #3 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd Enclosed Receiver Box | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** RC3 RC3-40 01-1246 | *****(Found) Ringgold, Ga.***** Non Operating Dirt Pit Lot #2 | | | This Enclosed Receiver Box Is Loaded W/ Front Loader Containers |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #4 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number:** 160 20-1160 20-01-1772 | *****(Found) Calhoun, Ga.***** | | | Was Used To Transport Multiple Front Load Containers |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #5 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number:** 00 2000-20 40520 | *****(Found) Calhoun, Ga.***** | | | Was Transported Inside Roll-Off SN 95115 |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #6 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |

52

| Serial Number: 161 20-01-1773 20-01-1773 | *****(Found) Calhoun, Ga.***** | | Had Been Used To Transport Multiple Front load Containers |
|---|---|---|---|
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | |

| Transportation Of Stolen Property: Ref #7 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 59** 2059-20 20-01-1824 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #8 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 60** 2060-20 20-01-1825 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #9 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 72** 2072-20 20-01-1128 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #10 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 71** 2071-20 20-01-1124 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #11 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 68** 2068-20 20-01-1102 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #12 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 01** 2001-20 40517 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #13 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 02** 2002-20 40518 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

54

| Transportation Of Stolen Property: Ref #14 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 03** **2003-20** **40519** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #15 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 67** **2067-20** **20-01-1101** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #16 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 04** **2004-20** **40578** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #17 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 107** **94197** **94197** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

55

| Transportation Of Stolen Property: Ref #18 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 200** **94200** **94200** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #19 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 201** **94201** **94201** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #20 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 203** **94203** **94203** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #21 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 204** **94204** **94204** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

56

| Transportation Of Stolen Property: Ref #22 | | | | |
| --- | --- | --- | --- | --- |
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 26** **2026-20** **42426** | *****(Found) Ringgold, Ga.***** **Non Operating Dirt Pit Lot #2** | | | Had Multiple Front-Load Containers Inside |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #23 | | | | |
| --- | --- | --- | --- | --- |
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 27** **2027-20** **42427** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #24 | | | | |
| --- | --- | --- | --- | --- |
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 20yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 1005** **91005** **91005** | *****(Found) Calhoun, Ga.***** | | | Was Transported Inside Of Container SN 95123 |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #25 | | | | |
| --- | --- | --- | --- | --- |
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 14** **2014-20** **40514** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #26 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 15** **2015-30** **40515** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #27 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 16** **2016-30** **40516** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #28 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 18** **2018-30** **40542** | **\*\*\*\*\*(Found) Ringgold, Ga.\*\*\*\*\*** **Non Operating Dirt Pit Lot #2** | | | Had Multiple Front-Load Containers Inside IMPOUNDED IN ATLANTA BY POLICE 2/21/07 |
| | **Note**: This container has been taken across state lines. This container has had some of identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #29 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 17** **2017-30** **40543** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

58

| Transportation Of Stolen Property: Ref #30 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 20** **2020-30** **40544** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #31 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 13** **2013-30** **40545** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #32 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 12** **2012-30** **40577** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #33 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 19** **2019-30** **40578** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

**Transportation Of Stolen Property: Ref #34**

| Size | Owner | Lien Holder | Security Agreement | Current Status |
|------|-------|-------------|--------------------|----------------|
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 79** **2079-30** **30-01-1195** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

**Transportation Of Stolen Property: Ref #35**

| Size | Owner | Lien Holder | Security Agreement | Current Status |
|------|-------|-------------|--------------------|----------------|
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 78** **2078-30** **30-01-1188** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | This Container Had Been Used To Transport Roll-Off SN 295116 |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

**Transportation Of Stolen Property: Ref #36**

| Size | Owner | Lien Holder | Security Agreement | Current Status |
|------|-------|-------------|--------------------|----------------|
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: \* \* 30-01-1197** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

**Transportation Of Stolen Property: Ref #37**

| Size | Owner | Lien Holder | Security Agreement | Current Status |
|------|-------|-------------|--------------------|----------------|
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 73** **2073-30** **30-01-1125** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

60

| Transportation Of Stolen Property: Ref #38 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 74** **2074-30** **30-01-1126** | *****(Found) Ringgold, Ga.***** **Non Operating Dirt Pit Lot #2** | | | Had Been Used To Transport Multiple Front load Containers |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #39 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 109** **95109** **95109** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #40 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 115** **95115** **95115** | *****(Found) Calhoun, Ga.***** | | | This Container Had Been Used To Transport Roll-Off SN 2000-20 |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #41 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 116** **95116** **95116** | *****(Found) Calhoun, Ga.***** | | | Was Transported Inside Roll-Off Container SN 01-1188 |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

61

| Transportation Of Stolen Property: Ref #42 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number:** **117** **95117** **95117** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | Stolen Converted |

| Transportation Of Stolen Property: Ref #43 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc. | Yes | Stolen Converted |
| **Serial Number:** **118** **95118** **95118** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | This Container Was Transported Inside 30yd SN 95120 |

| Transportation Of Stolen Property: Ref #44 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number:** **87** **2087-30** **30-01-1849** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | Stolen Converted |

| Transportation Of Stolen Property: Ref #45 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** **120** **95120** **95120** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | This Container Was Used To Transport 30yd SN 95118 |

62

| Transportation Of Stolen Property: Ref #46 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number: 121** **95121** **95121** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #47 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number: 122** **95122** **95122** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #48 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 123** **95123** **95123** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | Has Been Used To Transport Container SN 91005 |
| | **Note**: This container has been taken across state lines. This container has had all identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #49 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number: 124** **95124** **95124** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

63

| Transportation Of Stolen Property: Ref #50 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** **125** **95125** **95125** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #51 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** **126** **95126** **95126** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | Had Been Used To Transport Multiple Front Load Containers |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #52 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** **127** **95127** **95127** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #53 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** **128** **95128** **95128** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #54 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 130** **95129** **95129** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

*(In the Serial Number column, the number reads 129)*

| Transportation Of Stolen Property: Ref #55 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 130** **95130** **95130** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | Was Used To Transport Roll-Off Container SN 2066-30 |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #56 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 131** **95131** **95131** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #57 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 132** **95132** **95132** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #58 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 51** **2051-30** **30-01-1641** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #59 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 53** **2053-30** **30-01-1646** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #60 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 52** **2052** **30-01-1643** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #61 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 54** **2054-30** **30-01-1647** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #62 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number: 55** **2055-30** **30-01-1648** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #63 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number: 58** **2058-30** **30-01-1651** | **\*\*\*\*\*(Found) Ringgold, Ga.\*\*\*\*\* Non Operating Dirt Pit Lot #2** | | | Had Multiple Front-Load Containers Inside That Had Been Transported |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #64 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number: 57** **2057-30** **30-01-1650** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #65 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number: 56** **2056-30** **30-01-1649** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #66 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 78** **2078-30** **30-01-1188** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #67 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 64** **2064-30** **30-01-1970** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #68 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 66** **2066-30** **30-01-1974** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #69 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 65** **2065-30** **30-01-1972** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #70 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 69** **2069-30** **30-01-1189** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #71 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 75** **2075-30** **30-01-1189** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #72 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 42** **2042-30** **30-01-1473** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #73 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 41** **2041-30** **30-01-1470** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

69

| Transportation Of Stolen Property: Ref #74 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 40** 2040-30 30-01-1469 | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #75 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 39** 2039-30 30-01-1468 | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #76 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: * *** 30-01-1632 | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #77 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: * *** 30-01-1572 | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

70

| Transportation Of Stolen Property: Ref #78 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number:** **\*** **\*** **30-01-1585** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #79 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit | Yes | Stolen Converted |
| **Serial Number:** **85** **2085-40** **40-01-1213** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #80 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | Stolen Converted<br><br>Was Used To Transport Multiple Front Load Containers |
| **Serial Number:** **81** **2081-30** **34349** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #81 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number:** **23** **2023-30** **41614** | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

71

| Transportation Of Stolen Property: Ref #82 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 28 2028-30 42429** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #83 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 76 2076-30 30-01-1187** | | | | IMPOUNDED BY ATLANTA POLICE 2/21/07 |
| | **Note**: This container has been taken across state lines. This container has had some identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #84 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | Star Waste Services, LLC | Financial Federal Credit, Inc. | Yes | Stolen Converted |
| **Serial Number: 86 2086-30 40-01-1217** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | Was Used To Transport Multiple Front Load Containers |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #85 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number: 29 2029-40 40497** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | Was Used To Transport Multiple Front Load Containers |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

72

| Transportation Of Stolen Property: Ref #86 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 05** **2005-40 42430** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #87 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 80** **2080-30 35939** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #88 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 82** **2082-30 35863** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #89 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number: 83** **2083-30 35942** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #90 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | |
| **Serial Number: 84** 2084-30 35940 | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #91 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 30yd | WLE/SHE | | LEASE | |
| **Serial Number: 61** 20-1161 01-1819 | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #92 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | WLE/SHE | | LEASE | |
| **Serial Number: 29** 2029-40 40497 | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #93 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | EBC | Center Capital Corporation | LEASED | |
| **Serial Number: 6** 2006-40 40498 | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

74

| Transportation Of Stolen Property: Ref #94 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | EBC | Center Capital Corporation | LEASED | Stolen Converted |
| **Serial Number: 7** **2007-40** **40507** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #95 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 5073** **95073** **95073** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #96 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 5074** **95074** **95074** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #97 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number: 5075** **95075** **95075** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #98 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | |
| **5076** 95076 95076 | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | This Container Was Loaded With Front Load Containers |

| Transportation Of Stolen Property: Ref #99 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** | | | | |
| **5077** 95077 95077 | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #100 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** | **\*\*\*\*\*(Found) Calhoun, Ga.\*\*\*\*\*** | | | This Container Was Used To Transport Roll-Off SN 2069-30 |
| **5078** 95078 95078 | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #101 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | Stolen Converted |
| **Serial Number:** | | | | |
| **5079** 95079 95079 | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #102 | | | | |
|---|---|---|---|---|
| Size | Owner | Lien Holder | Security Agreement | Current Status |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number:** **5080** **95080** **95080** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #103 | | | | |
|---|---|---|---|---|
| Size | Owner | Lien Holder | Security Agreement | Current Status |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number:** **341** **95341** **95341** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #104 | | | | |
|---|---|---|---|---|
| Size | Owner | Lien Holder | Security Agreement | Current Status |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number:** **342** **95342** **95342** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #105 | | | | |
|---|---|---|---|---|
| Size | Owner | Lien Holder | Security Agreement | Current Status |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number:** **344** **95344** **95344** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #106 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | Star Waste Services, LLC | Financial Federal Credit, Inc | Yes | |
| **Serial Number: 358** **95358** **95358** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #107 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 45** **2045-40** **40-01-1466** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #108 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 43** **2043-40** **40-01-1464** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #109 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | |
| **Serial Number: 44** **2044-40** **40-01-1465** | | | | Stolen Converted |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #110 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number:** **50** **2050-40** **40-01-1492** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #111 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number:** **47** **2047-40** **40-01-1488** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #112 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number:** **49** **2049-40** **40-10-1491** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #113 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number:** * * **40-01-1551** | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #114 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted<br><br>Had Underwent Significant Alteration |
| **Serial Number:**<br>*<br>*<br>40-01-5304 | *****(Found) Calhoun, Ga.***** | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #115 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | WLE/SHE | | LEASE | Stolen Converted<br><br>Had Been Used To Transport Multiple Front Load Containers |
| **Serial Number:**<br>24<br>2024-40<br>41616 | *****(Found) Calhoun, Ga.***** | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #116 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number:**<br>21<br>2021-40<br>41529 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #117 | | | | |
|---|---|---|---|---|
| **Size** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 40yd | WLE/SHE | | LEASE | Stolen Converted |
| **Serial Number:**<br>25<br>2025-40<br>41615 | | | | |
| | **Note**: This container has been taken across state lines. This container has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #118 | | | | |
|---|---|---|---|---|
| Size | Owner | Lien Holder | Security Agreement | Current Status |
| 40yd | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number: CP-1** * | | | | |
| | **Note**: This compactor has been taken across state lines. This compactor has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

| Transportation Of Stolen Property: Ref #119 | | | | |
|---|---|---|---|---|
| Size | Owner | Lien Holder | Security Agreement | Current Status |
| Compactor | SHE/WLE/EBC | Federated Capital Services | Yes | Stolen Converted |
| **Serial Number: CP-2** | | | | |
| | **Note**: This compactor has been taken across state lines. This compactor has had identifying marks (Manufacturers Serial Numbers) removed. | | | |

**Schedule 2**

**STOLEN FRONT LOAD CONTAINER LISTING**

**LIEN HOLDERS: (FFCI):  FINANCIAL FEDERAL CREDIT, INC.**

**(CCC):  CENTER CAPITAL CORPORATION**

**(FCS):  FEDERATED CAPITAL SERVICES**

**OWNER OF EQUIPMENT:  STAR WASTE SERVICES, LLC – PLAINTIFF**

**OWNER OF EQUIPMENT: (WLE/SHE) (*NO LIEN HOLDER*) PERSONALLY OWNED EQUIPMENT & (EBC), PLAINTIFF, WITH LIENS USED BY STAR WASTE SERVICES, LLC AND STAR WASTE DISPOSAL, LLC – PLAINTIFFS**

| Ct. | Container Serial Number & Violation 18 U.S.C. § 2312 & 2313 Reference Number | Container Size | Lien Holder | Security Agreement | Status as of 2/20/07 |
|---|---|---|---|---|---|
| 1 | 2001-2887 | 2 | FFCI | YES | GEORGIA |
| 2 | 2007-3132 | 2 | FFCI | YES | GEORGIA |
| 3 | 2001-3135 | 2 | FFCI | YES | GEORGIA |
| 4 | 2001-2846 | 2 | FFCI | YES | GEORGIA |
| 5 | 2001-3138 | 2 | FFCI | YES | GEORGIA |
| 6 | 2001-3146 | 2 | FFCI | YES | GEORGIA |
| 7 | 2001-3147 | 2 | FFCI | YES | GEORGIA |
| 8 | 2001-3153 | 2 | FFCI | YES | GEORGIA |
| 9 | 2001-3164 | 2 | FFCI | YES | GEORGIA |
| 10 | 2001-3177 | 2 | FFCI | YES | GEORGIA |
| 11 | 2000-3362 | 2 | FFCI | YES | GEORGIA |
| 12 | 2000-3372 | 2 | FFCI | YES | GEORGIA |
| 13 | 2000-3379 | 2 | FFCI | YES | GEORGIA |
| 14 | 2000-3405 | 2 | FFCI | YES | GEORGIA |
| 15 | 2000-3406 | 2 | FFCI | YES | GEORGIA |
| 16 | 2000-3410 | 2 | FFCI | YES | GEORGIA |
| 17 | 2000-3411 | 2 | FFCI | YES | GEORGIA |
| 18 | 2002-3806 | 4 | FFCI | YES | GEORGIA |
| 19 | 2002-3864 | 4 | FFCI | YES | GEORGIA |

| 20 | 2001-3765 | 4 | FFCI | YES | GEORGIA |
|----|-----------|---|------|-----|---------|
| 21 | 2001-3766 | 4 | FFCI | YES | GEORGIA |
| 22 | 2001-3257 | 4 | FFCI | YES | GEORGIA |
| 23 | 2001-3274 | 4 | FFCI | YES | GEORGIA |
| 24 | 2001-3276 | 4 | FFCI | YES | GEORGIA |
| 25 | 2001-3260 | 4 | FFCI | YES | GEORGIA |
| 26 | 2001-3251 | 4 | FFCI | YES | GEORGIA |
| 27 | 2001-3272 | 4 | FFCI | YES | GEORGIA |
| 28 | 2001-3344 | 6 | FFCI | YES | GEORGIA |
| 29 | 2001-3350 | 6 | FFCI | YES | GEORGIA |
| 30 | 2001-3354 | 6 | FFCI | YES | GEORGIA |
| 31 | 2001-3347 | 6 | FFCI | YES | GEORGIA |
| 32 | 2001-3355 | 6 | FFCI | YES | GEORGIA |
| 33 | 2001-3358 | 6 | FFCI | YES | GEORGIA |
| 34 | 2001-1217 | 6 | FFCI | YES | GEORGIA |
| 35 | 2001-1220 | 6 | FFCI | YES | GEORGIA |
| 36 | 2001-1221 | 6 | FFCI | YES | GEORGIA |
| 37 | 2001-1800 | 6 | FFCI | YES | GEORGIA |
| 38 | 2001-3433R | 6R | FFCI | YES | GEORGIA |
| 39 | 2001-1831 | 6 | FFCI | YES | GEORGIA |
| 40 | 2001-1834 | 6 | FFCI | YES | GEORGIA |
| 41 | 2001-3363 | 6 | FFCI | YES | GEORGIA |
| 42 | 2001-3377 | 6 | FFCI | YES | GEORGIA |

| 43 | 2001-3379 | 6 | FFCI | YES | GEORGIA |
|---|---|---|---|---|---|
| 44 | 01-1479 | 6 | FFCI | YES | GEORGIA |
| 45 | 01-4366 | 6 | FFCI | YES | GEORGIA |
| 46 | 2001-7355 | 8 | FFCI | YES | GEORGIA |
| 47 | 2001-3757 | 8 | FFCI | YES | GEORGIA |
| 48 | 2001-3760 | 8 | FFCI | YES | GEORGIA |
| 49 | 2001-3742 | 8 | FFCI | YES | GEORGIA |
| 50 | 2001-3743 | 8 | FFCI | YES | GEORGIA |
| 51 | 2001-3646 | 8 | FFCI | YES | GEORGIA |
| 52 | 2001-3647 | 8 | FFCI | YES | GEORGIA |
| 53 | 2001-2534 | 8 | FFCI | YES | GEORGIA |
| 54 | 2001-2535 | 8 | FFCI | YES | GEORGIA |
| 55 | 2001-3634 | 8 | FFCI | YES | GEORGIA |
| 56 | 2001-3638 | 8 | FFCI | YES | GEORGIA |
| 57 | 2001-3639 | 8 | FFCI | YES | GEORGIA |
| 58 | 2001-3641 | 8 | FFCI | YES | GEORGIA |
| 59 | 2001-3642 | 8 | FFCI | YES | GEORGIA |
| 60 | 2001-3645 | 8 | FFCI | YES | GEORGIA |
| 61 | 2001-3646 | 8 | FFCI | YES | GEORGIA |
| 62 | 2001-3701 | 8 | FFCI | YES | GEORGIA |
| 63 | 2001-3702 | 8 | FFCI | YES | GEORGIA |
| 64 | 2001-2533 | 8 | FFCI | YES | GEORGIA |
| 65 | 01-5883 | 8 | FFCI | YES | GEORGIA |

| | | | | | |
|---|---|---|---|---|---|
| 66 | 01-5754 | 8 | FFCI | YES | GEORGIA |
| 67 | 01-6479 | 8 | FFCI | YES | GEORGIA |
| 68 | 01-5882 | 8 | FFCI | YES | GEORGIA |
| 69 | 01-6475 | 8 | FFCI | YES | GEORGIA |
| 70 | 01-5775 | 8 | FFCI | YES | GEORGIA |
| 71 | 01-6918 | 8 | FFCI | YES | GEORGIA |
| 72 | 01-6480 | 10 | FFCI | YES | GEORGIA |
| 73 | 40658 | 4 | CCC | YES | GEORGIA |
| 74 | 01-662 | 4 | CCC | YES | GEORGIA |
| 75 | 40664 | 4 | CCC | YES | GEORGIA |
| 76 | 40666 | 4 | CCC | YES | GEORGIA |
| 77 | 40667 | 4 | CCC | YES | GEORGIA |
| 78 | 40668 | 4 | CCC | YES | GEORGIA |
| 79 | 40669 | 4 | CCC | YES | GEORGIA |
| 80 | 40670 | 4 | CCC | YES | GEORGIA |
| 81 | 40671 | 4 | CCC | YES | GEORGIA |
| 82 | 40472 | 4 | CCC | YES | GEORGIA |
| 83 | 40475 | 4 | CCC | YES | GEORGIA |
| 84 | 40476 | 4 | CCC | YES | GEORGIA |
| 85 | 40477 | 4 | CCC | YES | GEORGIA |
| 86 | 40478 | 4 | CCC | YES | GEORGIA |
| 87 | 40479 | 4 | CCC | YES | GEORGIA |
| 88 | 40700 | 2 | CCC | YES | GEORGIA |

| 89 | 40695 | 3 | CCC | YES | GEORGIA |
|---|---|---|---|---|---|
| 90 | 40697 | 3 | CCC | YES | GEORGIA |
| 91 | 40480 | 6 | CCC | YES | GEORGIA |
| 92 | 40482 | 6 | CCC | YES | GEORGIA |
| 93 | 40483 | 6 | CCC | YES | GEORGIA |
| 94 | 40484 | 6 | CCC | YES | GEORGIA |
| 95 | 40458 | 6 | CCC | YES | GEORGIA |
| 96 | 40459 | 6 | CCC | YES | GEORGIA |
| 97 | 40460 | 6 | CCC | YES | GEORGIA |
| 98 | 40465 | 6 | CCC | YES | GEORGIA |
| 99 | 40471 | 6 | CCC | YES | GEORGIA |
| 100 | 40533 | 8 | CCC | YES | GEORGIA |
| 101 | 40534 | 8 | CCC | YES | GEORGIA |
| 102 | 40535 | 8 | CCC | YES | GEORGIA |
| 103 | 40536 | 8 | CCC | YES | GEORGIA |
| 104 | 40537 | 8 | CCC | YES | GEORGIA |
| 105 | 40538 | 8 | CCC | YES | GEORGIA |
| 106 | 40539 | 8 | CCC | YES | GEORGIA |
| 107 | 40540 | 8 | CCC | YES | GEORGIA |
| 108 | 40541 | 8 | CCC | YES | GEORGIA |
| 109 | 40542 | 8 | CCC | YES | GEORGIA |
| 110 | 40573 | 8 | CCC | YES | GEORGIA |
| 111 | 40574 | 8 | CCC | YES | GEORGIA |

| 112 | 40575 | 8 | CCC | YES | GEORGIA |
|-----|-------|---|-----|-----|---------|
| 113 | 40500 | 8 | CCC | YES | GEORGIA |
| 114 | 40501 | 8 | CCC | YES | GEORGIA |
| 115 | 40502 | 8 | CCC | YES | GEORGIA |
| 116 | 40503 | 8 | CCC | YES | GEORGIA |
| 117 | 40505 | 8 | CCC | YES | GEORGIA |
| 118 | 00-3018 | 4 | FCS | YES | GEORGIA |
| 119 | 00-3067 | 4 | FCS | YES | GEORGIA |
| 120 | 00-7047 | 4 | FCS | YES | GEORGIA |
| 121 | 00-7230 | 4 | FCS | YES | GEORGIA |
| 122 | 00-4267 | 4 | FCS | YES | GEORGIA |
| 123 | 00-4270 | 4 | FCS | YES | GEORGIA |
| 124 | 00-4263 | 4 | FCS | YES | GEORGIA |
| 125 | 00-4348 | 4 | FCS | YES | GEORGIA |
| 126 | 01-21467 | 4 | FCS | YES | GEORGIA |
| 127 | 01-3093 | 4 | FCS | YES | GEORGIA |
| 128 | 01-2918 | 4 | FCS | YES | GEORGIA |
| 129 | 01-4328 | 4 | FCS | YES | GEORGIA |
| 130 | 01-1312 | 4 | FCS | YES | GEORGIA |
| 131 | 01-1313 | 4 | FCS | YES | GEORGIA |
| 132 | 01-1314 | 4 | FCS | YES | GEORGIA |
| 133 | 01-1315 | 4 | FCS | YES | GEORGIA |
| 134 | 01-1316 | 4 | FCS | YES | GEORGIA |

| 135 | 01-1364 | 6 | FCS | YES | GEORGIA |
|-----|---------|---|-----|-----|---------|
| 136 | 01-1389 | 6 | FCS | YES | GEORGIA |
| 137 | 01-1530 | 6 | FCS | YES | GEORGIA |
| 138 | 01-3411 | 6 | FCS | YES | GEORGIA |
| 139 | 01-3710 | 6 | FCS | YES | GEORGIA |
| 140 | 01-3856 | 6 | FCS | YES | GEORGIA |
| 141 | 01-2100 | 6 | FCS | YES | GEORGIA |
| 142 | 01-2064 | 6 | FCS | YES | GEORGIA |
| 143 | 01-2067 | 6 | FCS | YES | GEORGIA |
| 144 | 01-4626 | 6 | FCS | YES | GEORGIA |
| 145 | 01-4549 | 6 | FCS | YES | GEORGIA |
| 146 | 01-3200 | 6 | FCS | YES | GEORGIA |
| 147 | 01-2926 | 6 | FCS | YES | GEORGIA |
| 148 | 01-2060 | 6 | FCS | YES | GEORGIA |
| 149 | 01-3276 | 8 | FCS | YES | GEORGIA |
| 150 | 01-3268 | 8 | FCS | YES | GEORGIA |
| 151 | 01-3280 | 8 | FCS | YES | GEORGIA |
| 152 | 01-3264 | 8 | FCS | YES | GEORGIA |
| 153 | 00-8839 | 6 | FCS | YES | GEORGIA |
| 154 | 00-885 | 6 | FCS | YES | GEORGIA |
| 155 | 01-701 | 6 | FCS | YES | GEORGIA |
| 156 | 01-702 | 6 | FCS | YES | GEORGIA |
| 157 | 01-2098 | 6 | FCS | YES | GEORGIA |

| | | | | | |
|---|---|---|---|---|---|
| 158 | 01-2061 | 6 | FCS | YES | GEORGIA |
| 159 | 01-1542 | 8 | FCS | YES | GEORGIA |
| 160 | 01-774 | 8 | FCS | YES | GEORGIA |
| 161 | 01-713 | 8 | FCS | YES | GEORGIA |
| 162 | 01-839 | 8 | FCS | YES | GEORGIA |
| 163 | 01-792 | 8 | FCS | YES | GEORGIA |
| 164 | 01-837 | 8 | FCS | YES | GEORGIA |
| 165 | 01-693 | 8 | FCS | YES | GEORGIA |
| 166 | 01-698 | 8 | FCS | YES | GEORGIA |
| 167 | 01-1520 | 8 | FCS | YES | GEORGIA |
| 168 | 01-1589 | 8 | FCS | YES | GEORGIA |
| 169 | 01-820 | 8 | FCS | YES | GEORGIA |
| 170 | 01-2234 | 8 | FCS | YES | GEORGIA |
| 171 | 01-2214 | 8 | FCS | YES | GEORGIA |
| 172 | 01-2216 | 8 | FCS | YES | GEORGIA |
| 173 | 01-2224 | 8 | FCS | YES | GEORGIA |
| 174 | 01-2284 | 8 | FCS | YES | GEORGIA |
| 175 | 01-820 | 8 | WLE/SHE | LEASED | GEORGIA |
| 176 | 01-922 | 6 | WLE/SHE | LEASED | GEORGIA |
| 177 | 01-1364 | 6 | WLE/SHE | LEASED | GEORGIA |
| 178 | 01-1479 | 6 | WLE/SHE | LEASED | GEORGIA |
| 179 | 01-1520 | 8 | WLE/SHE | LEASED | GEORGIA |
| 180 | 01-1530 | 6 | WLE/SHE | LEASED | GEORGIA |

| 181 | 01-1551 | 2 | WLE/SHE | LEASED | GEORGIA |
|-----|---------|---|---------|--------|---------|
| 182 | 01-1585 | 4 | WLE/SHE | LEASED | GEORGIA |
| 183 | 01-2098 | 6 | WLE/SHE | LEASED | GEORGIA |
| 184 | 01-2113 | 4 | WLE/SHE | LEASED | GEORGIA |
| 185 | 01-2133 | 4 | WLE/SHE | LEASED | GEORGIA |
| 186 | 01-2139 | 4 | WLE/SHE | LEASED | GEORGIA |
| 187 | 01-2155 | 4 | WLE/SHE | LEASED | GEORGIA |
| 188 | 01-2171 | 4 | WLE/SHE | LEASED | GEORGIA |
| 189 | 01-2177 | 4 | WLE/SHE | LEASED | GEORGIA |
| 190 | 01-2467 | 4 | WLE/SHE | LEASED | GEORGIA |
| 191 | 01-2533 | 8 | WLE/SHE | LEASED | GEORGIA |
| 192 | 01-3813 | 4 | WLE/SHE | LEASED | GEORGIA |
| 193 | 01-3057 | 4 | WLE/SHE | LEASED | GEORGIA |
| 194 | 01-3067 | 4 | WLE/SHE | LEASED | GEORGIA |
| 195 | 01-3406 | 2 | WLE/SHE | LEASED | GEORGIA |
| 196 | 01-3710 | 6 | WLE/SHE | LEASED | GEORGIA |
| 197 | 01-3721 | 8R | WLE/SHE | LEASED | GEORGIA |
| 198 | 01-3836 | 6 | WLE/SHE | LEASED | GEORGIA |
| 199 | 01-4348 | 4 | WLE/SHE | LEASED | GEORGIA |
| 200 | 01-5167 | 6 | WLE/SHE | LEASED | GEORGIA |
| 201 | 01-5195 | 6 | WLE/SHE | LEASED | GEORGIA |
| 202 | 01-5196 | 6 | WLE/SHE | LEASED | GEORGIA |
| 203 | 01-5197 | 6 | WLE/SHE | LEASED | GEORGIA |

| | | | | | |
|---|---|---|---|---|---|
| 204 | 01-5217 | 6 | WLE/SHE | LEASED | GEORGIA |
| 205 | 01-5236 | 6 | WLE/SHE | LEASED | GEORGIA |
| 206 | 01-5276 | 4 | WLE/SHE | LEASED | GEORGIA |
| 207 | 01-5854 | 8 | WLE/SHE | LEASED | GEORGIA |
| 208 | 01-6882 | 6 | WLE/SHE | LEASED | GEORGIA |
| 209 | 01-6919 | 6 | WLE/SHE | LEASED | GEORGIA |
| 210 | 01-6924 | 6 | WLE/SHE | LEASED | GEORGIA |
| 211 | 01-6950 | 6 | WLE/SHE | LEASED | GEORGIA |
| 212 | 01-7047 | 4 | WLE/SHE | LEASED | GEORGIA |
| 213 | 01-7374 | 4 | WLE/SHE | LEASED | GEORGIA |
| 214 | 02-2305 | 4 | WLE/SHE | LEASED | GEORGIA |
| 215 | 02-2393 | 6 | WLE/SHE | LEASED | GEORGIA |
| 216 | 02-2426 | 8R | WLE/SHE | LEASED | GEORGIA |
| 217 | 2002-5857 | 8 | WLE/SHE | LEASED | GEORGIA |
| 218 | 2001-3638 | 8R | WLE/SHE | LEASED | GEORGIA |
| 219 | 2001-3641 | 8R | WLE/SHE | LEASED | GEORGIA |
| 220 | 2001-3645 | 8R | WLE/SHE | LEASED | GEORGIA |
| 221 | 2001-3646 | 8R | WLE/SHE | LEASED | GEORGIA |
| 222 | 2001-3648 | 8R | WLE/SHE | LEASED | GEORGIA |
| 223 | 2001-3702 | 8R | WLE/SHE | LEASED | GEORGIA |
| 224 | 2001-3717 | 8R | WLE/SHE | LEASED | GEORGIA |
| 225 | 2001-3718 | 8R | WLE/SHE | LEASED | GEORGIA |
| 226 | 41527 | 2 | WLE/SHE | LEASED | GEORGIA |

| | | | | | |
|---|---|---|---|---|---|
| 227 | 41529 | 2 | WLE/SHE | LEASED | GEORGIA |
| 228 | 41531 | 2 | WLE/SHE | LEASED | GEORGIA |
| 229 | 41533 | 2 | WLE/SHE | LEASED | GEORGIA |
| 230 | 41534 | 2 | WLE/SHE | LEASED | GEORGIA |
| 231 | 41535 | 3 | WLE/SHE | LEASED | GEORGIA |
| 232 | 41538 | 3 | WLE/SHE | LEASED | GEORGIA |
| 233 | 41539 | 3 | WLE/SHE | LEASED | GEORGIA |
| 234 | 2001-3634 | 8R | WLE/SHE | LEASED | GEORGIA |
| 235 | 2001-3639 | 8R | WLE/SHE | LEASED | GEORGIA |
| 236 | 2001-3701 | 8R | WLE/SHE | LEASED | GEORGIA |

**Schedule 3**

**STOLEN RESIDENTIAL CARTS (96 GAL.)**

**LIEN HOLDERS: (FFCI):  FINANCIAL FEDERAL CREDIT, INC.**
**(OTTO): OTTO ENVIRONMENTAL**
**(FCL):  FEDERATED CAPITAL LEASING**

**OWNER OF EQUIPMENT: (SWS):  STAR WASTE SERVICES, LLC**
**PLAINTIFF**
**(SWD): STAR WASTE DISPOSAL, LLC**
**PLAINTIFF**

| Qty. | Owner | Lien Holder | Current Status | Location |
|---|---|---|---|---|
| 495 | SWD | (OTTO) | Stolen | Unknown |
| 495 | SWD | (FCL) | Stolen | Unknown |
| 500 | SWS | (FFCI) | Stolen | Unknown |
| 1,000 | SWS | NONE | Stolen | Unknown |

## Schedule 4

## VEHICLES – TRUCKS

## USED IN TRANSPORT OF OTHER EQUIPMENT ACROSS STATE LINES

| Used in Transportation Of Stolen Property: Ref #Veh. 1 | | | | |
|---|---|---|---|---|
| **Model** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 2000 Mack RD 688 S | Star Waste Services, LLC | Financial Federal Credit (until 2/16/07) | Yes (until 2/16/07) | Returned |
| **VIN Number:** 1M2P67C5YM053238 | **Note**: This truck was used in transport of items in Schedule 1 & 2 | | | |

| Used in Transportation Of Stolen Property: Ref #Veh. 2 | | | | |
|---|---|---|---|---|
| **Model** | **Owner** | **Lien Holder** | **Security Agreement** | **Current Status** |
| 1992 Ford F 700 | Star Waste Services, LLC | None | No | Returned |
| **VIN Number:** 1FDNF70J9NVA19301416 | **Note**: This truck was used in transport of items in Schedule 2 | | | |

## VIOLATIONS OF TENNESSEE STATE LAW

102.  **39-14-114.  FORGERY**.  Defendant Clarence Emmer committed forgery when he created the three fraudulent contracts.  (*Supra ¶¶* 71-74)  (See Collective Exhibit 21)

103.  **39-14-116.  HINDERING CREDITORS.**  The actions of the Defendants in stealing equipment when the lending institutions have secured liens on them; the

93

actions of the Defendants in grinding off and repainting this equipment; the actions of the Defendants in secreting stolen equipment, and the actions of the Defendants in claiming this equipment as belonging to them violates this section. (*Supra ¶¶* 101**,** *Schedules* 1-4, *Pages* 49-92)

104. **39-14-101 et seq. THEFT AND VANDALISM.** The equipment and trucks stolen by the Defendants are valued in excess of $500.00 each. By stealing or defacing equipment, the Defendants violated this section. (*Supra ¶¶* 101)

105**. 39-11-401. ACCESSORIES AFTER THE FACT.** The Defendants conspired with one another to willfully and maliciously commit the predicate acts described in Paragraphs 19 to 104, and thus violate this section.

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
### (R.I.C.O. 18 U.S.C. § 1962, *et seq.)*

106. The Plaintiffs realledge and restate Paragraphs 1 through 105.

107. At all relevant times, Clarence Emmer, Dan Emmer, Sr., Dan Emmer, Jr., Jason Emmer, George Emmer, and Bud Emmer, and the Limited Liability Corporate Defendant constituted an association-in-fact "enterprise," within the meaning of 18 U.S.C. §S 1961(4) and 1962(c), in that "they were a group of individuals associated in fact."

(a) Clarence Emmer is an individual "person" within the meaning of 18 U.S.C. § 1961(3) and 1961(c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b) Dan (Danny) Emmer, Jr., is an individual "person" within the meaning of

18 U.S.C. § 1961(3) and 1961(c)**,** who associated with and/or participated in the conduct of said enterprise's affairs.

(c) Jason Emmer is an individual "person" within the meaning of 18 U.S.C. § 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

(d) Dan Emmer, Sr. is an individual "person" within the meaning of 18 U.S.C. § 1961(3) and 1963 (c), who associated with and/or participated in the conduct of said enterprise's affairs.

(f) George Emmer is an individual "person" within the meaning of 18 U.S.C. §1961(3) and 1963(c), who associated with and/or participated in the conduct of said enterprise's affairs.

(g) Bud Emmer is an individual "person" within the meaning of 18 U.S.C. §1961(3) and 1963(c), who associated with and/or participated in the conduct of said enterprise's affairs.

(h) US Waste, LLC is an individual "person" within the meaning of 18 U.S.C. §1961(3) and 1962 (c), who associated with and/or participated in the conduct of said enterprises' affairs.

106. Between most of the year 2005, all of the year of 2006, and through this date, the Individual Defendants each personally and separately participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise though a pattern of racketeering activity within the meaning of 18 U.S.C.§1961(1), 1961(5) and 1962(c). The Individual Defendants' pattern of racketeering activity consisted of:

(a)      a scheme to defraud (*supra ¶¶* 19-105) that was knowingly and intentionally devised by the Individual Defendants to obtain all of Plaintiffs' property by means of false or fraudulent pretenses, representations, or promises; by the use of false names and false documents, for the purpose of executing such scheme, Individual Defendants placed or forseeably caused to be placed in a post office, matter that furthered the scheme, including but not limited to the material described with particularity in ¶¶ 84-90. Individual Defendants committed mail fraud, in violation of 18 U.S.C. § 1341, each time they used or forseeably caused the mail to be used to distribute the materials described in ¶¶ 82-90 and elsewhere.

(b)      a scheme to defraud (supra ¶¶ 19-105) that was knowingly devised by the Individual Defendants to obtain all of Plaintiffs' property by means of false or fraudulent pretenses, representations, or promises; by the use of false names and false documents, for the purpose of executing such scheme, Individual Defendants placed or forseeably caused to be place in a post office matter that furthered the scheme, including but not limited to the material described with particularity in ¶¶ 82-90. Individual Defendants committed mail fraud, in violation of 18 U.S.C. § 1341, each time they used or forseeably caused the materials to be used to distribute the materials described in ¶¶ 82-90 and elsewhere.

( c)      a scheme to defraud (*supra ¶¶* 19-105) that was knowingly devised by the Individual Defendants to obtain the Plaintiffs' money or property by means of willful and malicious false or fraudulent pretenses, representations, or promises; by the use of false names and false documents, for the purpose of executing such scheme, Individual Defendants used the wire services (telephone, fax, television) that furthered the scheme to defraud, as described with particularity in ¶¶ 87-90, each time they used or forseeably caused the wire services to be used in violation of 18 U.S.C. § 1343.

(d)      a scheme to defraud (*supra ¶¶* 19-105) that was knowingly and intentionally devised by the Individual Defendants to obtain the assets of the Plaintiffs' property and assets by means of willful and malicious false or fraudulent pretenses or representation, including but not limited to the illegal theft of Plaintiffs' property and using it as if it belonged to the Individual Defendants in violation of 18 U.S.C. theft and use of interstate commerce in violation of 18 U.S.C. §1952, 2312, 2313, 2314, and 1215. (*Supra ¶¶* 65-70, *Pages* 49 *ff*)

These predicate acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

96

109. The Enterprise alleged in ¶¶ 107 (*supra*) was at all times distinct from the pattern of racketeering activity alleged herein in that the Enterprise engaged in legitimate business activities beyond those necessary to carry out the alleged acts of racketeering.

110. The predicate acts described in ¶¶ 108 (*supra*) were related so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. §1962 ( c), in that the common purpose of the Individual Defendants and the Corporate Defendant, each personally or through their agent or agents, directly or indirectly, participated in all the acts and employed the same or similar methods of commission, was to defraud the Plaintiffs of all equipment and assets necessary for the continued operation of the company Plaintiffs.

111. The Plaintiffs were the victims of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

112. All of these predicate acts described in ¶¶ 108 (*supra*) were continuous so as to form a pattern of racketeering activity in that

(a) the Individual Defendants and the Corporate Defendant engaged in the predicate acts over a substantial time; or

(b) the patterns of racketeering activity engaged in by the Individual Defendants and the Corporate Defendant continues or threatens to continue because such conduct has become regular way of on-going business activities, and upon information and belief, have been utilized by the Defendants in other "take-overs" of companies.

113. As a direct and proximate result of, and by reason of, the activities of the Defendants, individual and corporate, and their conduct in violation of 18 U.S.C.

§1962(c), each of the Plaintiffs have been injured in their business or property, within the meaning of 18 U.S.C. §1964 (c) and are, therefore, entitled to recover threefold the damages each Plaintiff sustained together with the cost of the suit, including reasonable attorneys' and experts' fees.

**COUNT II**

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

**MILLER & MARTIN**

114.  The Plaintiffs realledge and restate Paragraphs 1 through 113.

115.  At all relevant times, Miller & Martin was the enterprise through which Clarence Emmer, US Waste LLC, and US Waste Atlanta LLC  formed an association in fact "enterprise" within the meaning of 18 U.S.C. §1964(4) and 1962 (c), in that "they were a group of individuals associated in fact."  (*Supra* ¶¶ 73-80)

116.  Clarence Emmer is an individual "person" within the meaning of 18 U.S.C. §1961(3) and 1961(c) who associated with and/or participated in the conduct of said enterprise's affairs.

117.  US Waste LLC is an individual "person" within the meaning of 18 U.S.C. § 1961(3) and 1961(c) who associated with and/or participated in the conduct of said enterprise's affairs.

118. U.S. Waste Atlanta LLC is an individual "person" within the meaning of 18 U.S.C. § 1961(3) and 1961(c) who associated with and/or participated in the conduct of said enterprise's affairs.

119.   Between February, 2007 through the date of the filing of this complaint, the Defendants used Miller and Martin to legitimize their illegal activities to defraud the Plaintiffs of their property and assets.  (*Supra ¶¶* 73-80)

120.   Defendant Clarence Emmer in the name of US Waste Atlanta LLC and for the benefit of U S Waste LLC caused a fraudulent complaint to be filed, by the enterprise and/or its agents, against two Member/Managers of the Plaintiffs in Hamilton County Chancery Court, Chattanooga ,Tennessee.  The complaint fraudulently alleges a breach written contracts (that are forgeries) and asks for a restraining order to prevent the Member/Managers from moving, selling, etc., their own assets, alleging that the assets belong to US Waste Atlanta, LLC.

121.   Defendant Clarence Emmer in the name of U.S. Waste Atlanta LLC and for the benefit of US Waste LLC used the enterprise and/or its agents to legitimize the fraudulent contracts allegedly to be drawn up by Mark Englund in the name of Star Waste Services and Star Waste Disposal, on the day of August 25, 2007, on Englund's computer, and signed by Englund and William Englund, Sr., when he knew and Miller & Martin and/or their agents should have known the office where these documents were allegedly drawn up was vacant on that day.  An agent of Miller & Martin represented the landlord who sent a "notice to vacate" on Miller & Martin stationery by noon on the 24th of August, 2007.  The Defendants' pattern of racketeering activity consisted of:

(a)   A scheme to defraud (*supra ¶¶* 119  to 121*)* that was knowingly and intentionally devised by the individual Defendants to obtain the Plaintiffs' property and assets by means of false or fraudulent pretenses, representations, or promise, by the use of a fraud upon the Court (of obstruction of justice in

violation of 18 U.SC. §1503), forged documents, in violation of Tennessee law and 18 U.S.C. § 1503).

(b) A scheme to defraud (*supra* ¶¶ 119 to 121) that was knowingly and intentionally devised by the individual Defendants to obtain the Plaintiffs' property and assets by means of perjury in violation of 18 U.S.C. § 1621).

122. These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of another.

123. The enterprise was at all time distinct from the pattern of racketeering activity alleged herein in that the Enterprise engaged in legitimate business activities beyond those necessary to carry out the alleged acts of racketeering.

124. The predicate acts described in ¶¶ 119 - 121 (*supra*) were related so as to establish a pattern of racketeering, within the meaning of 18 U.S.C. § 1962 (c), in that their common purpose was to defraud the Plaintiffs, the State of Tennessee Court System, Miller and Martin, each personally or through their or agents, directly or indirectly, in order to facilitate the willful and malicious taking of all property and assets of the Plaintiffs. The State of Tennessee Court System, Miller and Martin, and the Plaintiffs were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise related by distinguishing characteristics and were not isolated events.

125. All of the racketeering acts described in ¶¶ 73-80 & 119-121 (*supra*) were continuous so as to form a pattern of racketeering activity in that;

a. the Defendants engaged in the predicate acts over a substantial period of time; or

b. the patterns of racketeering activity engaged in by the Defendants continues or threatens to continue because such conduct has become a regular way of conducting the Defendants' on-going business activities and, upon information and belief, have been employed by the Defendants in other fraudulent take-over schemes.

126. At all relevant times, the enterprise alleged in ¶¶ 115 (*supra*) was engaged in, and their activities affected, interstate and foreign commerce.

127. As a direct and proximate result of, and by reason of, the activities of the Defendants, and their conduct in violation of 18 U.S.C. §1962 (c), each Plaintiff has been injured in its business or property, within the meaning of 18 U.S.C. § 1964(c) and each is, therefore, entitled to recover threefold the damages it has sustained together with the cost of the suit, including reasonable attorney's and experts' fees.

COUNT III

**(18 U.S.C. § 1962(d))**

**CONSPIRACY- DEFENDANTS**

128. Plaintiffs realledge and restate Paragraphs 1 through 127.

129. The individual Defendants, individually, and as agents of Defendant US Waste LLC, conspired with each other to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of racketeering activity (*see supra* ¶¶ 19 - 121) in violation of 18 U.S.C. § 1962(d) and Tennessee statutory law.

130. Plaintiffs were injured by Defendants overt acts as that are acts of racketeering or otherwise unlawful under the RICO statute in that said Defendants:

(a) corruptly obstructing, influencing or impeding an official proceeding,

or attempting to do so (see ¶¶ 19-127, *supra*) in violation of 18 USC §
1512 (c).

131. The individual Defendants, individually, and as agents of Defendant US
Waste LLC, intended to further an endeavor of the Individual Defendants and Corporate
Defendant which, if completed, would satisfy all the elements of a substantive RICO
criminal offense and adopted the goal of furthering or facilitating the criminal endeavor.
(*see supra* ¶¶ 19 -121*)*

132. At all relevant times, the enterprises alleged in ¶¶ 107 & 115 (*supra*) were
engaged in, and their activities affected, interstate commerce.

133. As a direct and proximate result of, and by reason of, the activities of the
Individual Defendants and the Corporate Defendant in their conspiracy and conduct in
violation of 18 U.S.C. § 1962(d), each Plaintiff has been injured in its business and
property, within the meaning of 18 U.S.C. §1964 (c) and each Plaintiff is, therefore,
entitled to recover threefold the damages it has sustained together with the cost of the
suit, including reasonable attorneys' and experts' fees.

## VIOLATION OF TENNESSEE LAW

134. The Plaintiffs realledge and restate Paragraphs 1 through 133.

135. The conspiracy to defraud and to steal the assets from the Plaintiffs under
Federal law are so closely aligned with Tennessee statutes of wrong doing, that in the
interest of justice, the Plaintiffs restate the violations heretofore delineated, now, under
Tennessee law.

136. The Defendants knowingly with intent to deprive the Plaintiffs of their property, fraudulently obtained, exercised control of, and converted the Plaintiffs' property without their consent.

137. The Defendants knowingly and with intent to defraud conspired to commit forgery in that they altered, made, completed, executed, authenticated the contracts offered as proof of a "deal," without the Plaintiffs' consent or knowledge.

138. The Defendants knowingly and with intent to defraud and to hinder secured creditors by creating false documents that purported to "give away" the rights of these creditors along with the rights of the Plaintiffs.

139. The Defendants knowingly and with intent to defraud and to deprive the Plaintiffs of their property by committing perjury under oath; to enumerate, Defendant Clarence Emmer committed perjury when he knowingly caused and allowed his Hamilton County Chancery Court complaint to be filed with false statements and when he committed perjury on March 8, 2007, when testifying before the Hamilton County Chancery Court.

140. The Defendants knowingly and with intent to defraud and to deprive the Plaintiffs of their property conspired to commit the above enumerated violations against the Plaintiffs.

**WHEREFORE,** Plaintiffs demand trial by jury and judgment from the Court as follows:

1. To award damages against the Defendants, jointly and severally, of a form of money equal to the amount of actual damages the Plaintiffs have sustained or will sustain;

2. To treble the amount of damages pursuant to Federal RICO organized crime statute 18 U.S.C. § 1964(c);

3. To award prejudgment interest on the amount of damages and/or losses Plaintiffs have incurred;

4. To award all costs of litigation incurred by Plaintiffs, including reasonable attorneys' fees and experts' fees, pursuant to Federal RICO 18 U.S.C. § 1964(c);

5. For compensatory damages;

6. For punitive damages;

7. To order the return of the Plaintiffs' property and assets; to enjoin the Defendants, jointly and severally, from interfering in that recovery.

8. For an Order pursuant to FRCP 64.

9. For any and all other relief that the Court deems just and proper.

Respectfully submitted,

/s/Lorraine Raymond
LORRAINE RAYMOND, BPR 012224
Attorney for Plaintiffs
744 McCallie Ave., Ste. 404
Chattanooga, TN 37403
423-266-6801
423-266-9398 (fax)