UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| STAR WASTE SERVICES, LLC, ) | |
| ENGLUND BROS. COMPANY, INC., ) | |
| STAR WASTE DISPOSAL, LLC, ) | |
| AMERICAN WASTE NETWORK, LLC, ) | |
| AMERICAN WASTE SERVICES, LLC, ) | |
| LADIES FIRST WASTE, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:07-CV-127 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| U.S. WASTE, LLC, ) | |
| CLARENCE JOSEPH EMMER, ) | |
| DAN FRANKLIN EMMER, SR., ) | |
| DAN FRANKLIN EMMER, JR., ) | |
| JASON R. EMMER, ) | |
| GEORGE FRANKLIN EMMER, ) | |
| BUD FRANKLIN EMMER, JR., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

The Court addresses two separate but related motions here. First, Plaintiffs Star Waste Services, LLC, et al. ("Plaintiffs") filed a motion to amend their complaint to add additional information they have received since originally filing (Court File No. 21). Defendants U.S. Waste, LLC, et al. ("Defendants") filed a motion in opposition (Court File Nos. 23, 24).

Second, Defendants filed a motion to dismiss the Plaintiffs' federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964 and to dismiss the remaining state claims (Court File No. 5). In its analysis, the Court also considers Defendants' supporting memorandum (Court File No. 6), Plaintiffs' response in opposition (Court File No. 9), Defendants' reply (Court File No. 10), and the arguments made by counsel at the

hearing on April 30, 2008.

Because the motion to amend was filed early in the litigation, will not cause undue prejudice to Defendants, and justice so requires, the Court will **GRANT** Plaintiffs' motion to amend the complaint (Court File No. 21).

Because Plaintiffs have met their factual burdens to survive a Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) motion to dismiss on the first two grounds and because the federal claims support supplemental jurisdiction over the state claims, this Court will **DENY** Defendants' motion to dismiss (Court File No. 5).

I.   **FACTUAL BACKGROUND**

Plaintiffs and Defendant U.S. Waste, LLC are businesses in the commercial waste disposal industry (*see* Court File No. 4, pp. 1-2). The remaining, individual defendants are members of the Emmer family, who operate or otherwise are connected to defendant U.S. Waste, LLC (*id.*, pp. 2-6). According to Plaintiffs, Defendants proposed a joint venture in the commercial waste business, which Plaintiffs accepted (*id.*, pp. 9-10). Defendants then proceeded to use various tactics to steal Plaintiffs' property through fraud and out-right theft (*id.*, pp. 12-37). Defendants, having illicitly obtained or unsuccessfully sought to obtain the majority of Plaintiffs' assets, then renounced the agreement (Court File No. 1, ¶ 51).[1]

Plaintiffs allege they are one of many victims in Defendants' history of similar schemes (*see*

---

[1] At the April 30, 2008 hearing, Defendants represented there was a contract between some or all of the Defendants and some or all of the Plaintiffs. This Court has no detailed evidence of the existence of such a contract, between whom the contract was made, or the terms of the alleged contract.

Court File No. 21, Attachments 1, 2). Plaintiffs allege fraud, the theft of other companies' equipment, the use of chop-shops to conceal and alter stolen goods for personal use or resale, and the use of personal aliases and varying company names to perpetuate their fraudulent schemes are all part of the continuing way in which Defendants do business (Court File No. 21, p. 5, Attachment 2).

The parties have previously litigated and continue to litigate matters which appear material to this suit in state court (*see* Court File No. 1, ¶¶ 67, 76). The parties informed this Court at a scheduling conference on January 18, 2008 that the pending state case is of limited scope - dealing only with two plaintiffs and two defendants, and dealing with a fraction of the property and damages involved here, namely three trucks and an unspecified number of commercial trash containers. Both parties represented to this Court the federal proceedings need not be delayed pending the resolution of the state court case.

## II.   STANDARD OF REVIEW

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998), accepts the complaint's factual allegations as true, *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determines whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (May 21, 2007) (rejecting traditional Fed. R. Civ. P. 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The Court may not grant a 12(b)(6) motion based upon its disbelief of a complaint's factual allegations, *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995), nor should the

Court weigh the evidence or evaluate the credibility of witnesses, *id*. (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The question is not whether the plaintiff will ultimately prevail but whether "the claimant is entitled to offer evidence to support the claims." *Kroll v. United States*, 58 F.3d 1087 (6th Cir. 1995); *Ecclesiastical Order of the Ism. of Am., Inc. v. Int'l Revenue Serv.*, 725 F.2d 398, 403 (6th Cir. 1984). At the same time, bare assertions of legal conclusions are insufficient, and the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

When a suit involves fraud or fraud-based claims, a plaintiff must plead his case with sufficient particularity as to the factual circumstances underlying the fraud. Fed. R. Civ. P. 9(b); *see Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (In order to allege predicate acts with the requisite specificity under Fed. R. Civ. P. 9(b), a plaintiff must provide the time, place, and contents of any misrepresentations.)

In interpreting RICO, a court must construe RICO broadly to effectuate its purpose. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497-98 (1985) ("RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to be liberally construed to effectuate its remedial purposes . . .") (citation and internal quotations omitted).

## III. ANALYSIS

### A. Plaintiffs' Motion to Amend

Plaintiffs move to amend their complaint, adding newly-discovered evidence to support their

4

allegations (Court File No. 21). Defendants' oppose the amendment, arguing the additional evidence does not rectify the inadequacies in the complaint that warrant dismissal, and thus amendment is futile (Court File No. 23, unnumbered p. 2).

Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiffs may amend their pleading with leave of the Court "when justice so requires." Upon reviewing the newly-discovered evidence, the Court determines this evidence is relevant to Plaintiffs' claim and the legal burdens Plaintiffs face in avoiding a dismissal under Fed. R. Civ. P. 12(b)(6). The Court therefore rejects Defendants' argument as to the futility of the amendment. Furthermore, the Court determines, because the motion to amend was made early in the litigation (prior even to discovery) and Plaintiffs' claims do not warrant dismissal at this stage, Defendants are not unduly prejudiced by the amendment.

The Court will **GRANT** Plaintiffs' motion to amend (Court File No. 21).

### B. Defendants' Motion to Dismiss

Defendants assert three grounds to support their motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and incorporating Fed. R. Civ. P. 9(b) (Court File No. 5), as follows: first, Plaintiffs fail to plead with requisite specificity any pattern of racketeering activity by Defendants (*id.*, p. 1); second, Plaintiffs fail to plead with requisite specificity facts establishing the existence of an association-in-fact enterprise or Defendants' participation in the operation or management of any such enterprise (*id.*, p. 2); and, third, this Court should decline supplemental jurisdiction over Plaintiffs' state law claims for forgery, hindering creditors, theft and vandalism, and accessories after the fact (*id.*).

#### 1. Pattern of Racketeering Activity

Defendants first move the Court to dismiss Plaintiffs' RICO claim for a failure to plead with

the requisite specificity any pattern of racketeering activity by Defendant U.S. Waste, LLC and the other defendants (Court File No. 6, p. 4). To establish a "pattern of racketeering activity," Plaintiffs must sufficiently allege (1) at least two predicate acts of racketeering activity within a ten-year period constituting a pattern of (2) related and (3) continuous racketeering behavior. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723-24 (6th Cir. 2006). Because Plaintiffs have sufficiently pleaded such a pattern of racketeering activity, the Court will **DENY** Defendants' motion to dismiss (Court File No. 5).

### a. Two Predicate Acts

A pattern of racketeering requires, in part, at least two predicate acts of racketeering behavior which occurred within ten years of each other. *See* 18 U.S.C. § 1961(5). Plaintiffs have alleged numerous illegal acts, many of which constitute predicate offenses pursuant to 18 U.S.C. § 1961(1).

### i. Wire Fraud, 18 U.S.C. § 1343

Plaintiffs allege acts of wire fraud in violation of 18 U.S.C. § 1343. Wire fraud under § 1343, in pertinent part, requires someone (1) having devised a scheme to defraud or obtain property by means of false or fraudulent pretenses (2) to transmit via wire, radio, or television a communication (3) for the purpose of executing their scheme.[2] *See also United States v. Bibby*, 752 F.2d 1116, 1126 (6th Cir. 1985). The transmissions must be made through interstate or foreign commerce. 18 U.S.C. § 1343; *e.g., United States v. Gale*, 468 F.3d 929, 937 (6th Cir. 2006).

---

[2]The requirement "for the purpose of executing the scheme" is satisfied when the wire or mail fraud is "incident to an essential part of the scheme" or "a step in [the] plot." *See Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (citing *Pereira v. United States*, 347 U.S. 1, 8 (1954) and *Badders v. United States*, 240 U.S. 391, 394 (1916)); *see also*, *United States v. Crossley*, 224 F.3d 847, 857 (6th Cir. 2000) (In the related context of mail fraud, "[t]o be considered part of the execution of the fraud, the Court further has instructed that the use of the mails need not be an essential element of the scheme.") (citation omitted).

6

In the case of a civil RICO claim, the scheme to defraud must be targeted at the plaintiff and involve fraudulent misrepresentations made to the plaintiff. *See Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1994), *cert. denied*, 512 U.S. 1207. The plaintiff must have detrimentally relied upon the fraudulent representations. *Brown v. Cassens Trans. Co.*, 492 F.3d 640, 643 (6th Cir. 2007) ("the well-established precedent of this circuit requires that a civil RICO plaintiff alleging mail or wire fraud plead reliance, that is, that a defendant made fraudulent representations to the plaintiff on which the plaintiff relied."); *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (determining a pleading inadequate where it failed to allege misrepresentations of material fact reasonably relied upon by the plaintiffs).

Here, Plaintiffs allege a scheme to defraud them of their property. This scheme was perpetuated through Defendants' knowingly-false representations to Plaintiffs that Defendants were involved in a joint venture with Plaintiffs to move to Atlanta to start a waste collection business (Court File No. 4, p. 9).[3] Relying on these representations, Plaintiffs moved their equipment to Atlanta, scouted Atlanta for possible waste collection contracts, closed down their business in Chattanooga, and permitted Defendants to take physical possession of some of their waste hauling equipment (*id.*, p. 19). Furthermore, Defendants, through the use of forged documents, repainting, and removal of serial numbers, converted Plaintiffs' waste hauling trucks and equipment (*id.*, pp.

---

[3] At the April 30, 2008 hearing, Defendants asserted Plaintiffs' claim concerning telephone calls involving representations of an agreement between the parties are too vague to satisfy an allegation of wire fraud because Plaintiffs do not expressly state to whom these representations were made. Although the complaint, spanning 104 pages, sometimes lacks the brevity and conciseness the Court would prefer, it is clear from the RICO Statement that at least some of the communications were made to William Englund (Court File No. 4, p. 9), and the context in other parts of the complaint indicate communications were made by Defendants to William Englund or a representation of Star Waste Services, LLC and/or the other, related Plaintiff businesses.

19-20). Plantiffs have sufficiently alleged a scheme to defraud, involving misrepresentations made directly to Plaintiffs, upon which they relied.

With regard to the specific instances of wire fraud, on numerous occasions throughout 2006, Clarence spoke to William and Mark Englund, over the telephone concerning the actions Plaintiffs needed to take or permit to facilitate the joint venture between the parties (Court File No. 4, pp. 9-10). William and Mark Englund are shareholders, members, and/or managers of the businesses constituting the plaintiffs in this case (*see* Court File No. 1, pp. 2-5). These telephone calls were interstate, made from Wisconsin to Tennessee (Testimony of Plaintiffs' Counsel, April 30, 2008 Hearing). *See* 18 U.S.C. § 1343; *e.g., Gale*, 468 F.3d at 937. Thus, assuming Plaintiffs' allegations are true, Defendants used interstate wires to perpetuate their scheme to defraud Plaintiffs. *See* 18 U.S.C. § 1343; *Bibby*, 752 F.2d at 1126.

Plaintiffs have alleged wire fraud in additional instances which, at the motion-to-dismiss stage, serve as a predicate offense. Plaintiffs allege Clarence, through his attorney, faxed three fabricated contracts, asserted to be written contracts made between the parties here, to law enforcement authorities in Fulton, Dekalb, Catoosa, and Gordon Counties in Georgia on February 22, 2007 (Court File No. 4, pp. 10-11). Plaintiffs allege these contracts are false and were distributed via fax with the intent to facilitate Defendants' scheme to defraud Plaintiffs of their property (*id*.)

Also, Plaintiffs allege Clarence made statements to reporters which were broadcast in the area on March 8, 2007, falsely accusing Plaintiffs of defrauding Defendants and others. These statements were targeted to substantiate Defendants' own, false claim to Plaintiffs' property (Court File No. 4, p. 11).

8

Plaintiffs also allege Clarence telephoned Veintenhaus Insurance Company of Wisconsin to cancel an insurance policy he had previously planned for Plaintiffs' trucks (Court File Nos. 1, pp. 22-23; 4, p. 10). This insurance was preliminarily procured to provide an "insurance binder," providing written documentation to support Defendants' false claim of ownership of Plaintiffs' property.

### ii. Interstate Transportation of Stolen Vehicles, 18 U.S.C. §§ 2312, 2313

Plaintiffs allege Defendants violated 18 U.S.C. § 2312, by transporting stolen vehicles across state lines, and § 2313, for possessing and concealing such vehicles they knew to be stolen (Court File No. 4, p. 13). Plaintiffs specifically allege Defendants stole and transported two trucks across state lines (Court File No. 1, p. 93). Plaintiffs have thus alleged a predicate offense under RICO, i.e. transporting a stolen vehicle across state lines, in violation of § 2312.[4]

Plaintiffs also allege Defendants concealed and sold Plaintiffs' *equipment*, knowing it to be stolen, in violation of § 2313 (Court File Nos. 1, pp. 32-34; 4, p. 13; 21, p. 4; 21, Attachment 2).[5]

---

[4]A violation of §2312 for transporting a stolen vehicle across state lines is distinct from any violations for the theft of the vehicle; thus, Defendants can be charged with a violation of §2312 even if Defendants also stole the vehicles. *See Kimball v. United States*, 437 F.2d 921, 923 (8th Cir. 1971) (The defendant stole the car which served as the basis of the 18 U.S.C. §2312 violation); *United States v. Baker*, 594 F.2d 709 (8th Cir. 1979) (The defendant stole a forklift and knew it would be transported out of state to be sold, violating 18 U.S.C. §2312); *Menter v. United States*, 282 F.2d 143, 144 (5th Cir. 1960) (The defendant took the car and drove it out of state, in violation of 18 U.S.C. §2312).

[5]The offenses under 18 U.S.C. §§ 2312 and 2313 are separate and distinct offenses, and thus a person who both transports the stolen vehicle across state lines and then conceals it, knowing it to be stolen, violates both statutes. *See United States v. Harrison*, 198 F.3d 247, 1999 WL 1111520, *2 (6th Cir. 1999) (unpublished) (describing the statutes as "similar, yet distinct."); *United States v. Thompson*, 442 F.2d 1333, 1334 (6th Cir. 1971); *United States v. Linkenauger*, 357 F.2d 925, 926 (6th Cir. 1966).

Furthermore, § 2313 involves numerous separate and distinct crimes. 18 U.S.C. § 2313

The context of Plaintiffs' filings indicate "equipment" refers only to the waste disposal containers. Although Plaintiffs argued, at the April 30, 2008 hearing, that such containers qualify as "vehicles" under § 2313, this issue has not been fully argued or briefed. As such, it is premature for the Court to make a determination of the validity of the legal argument. Since the Court's denial of Defendants' motion to dismiss is warranted regardless of whether the containers constitute "vehicles" and a violation of §2313, the Court refrains from considering Plaintiffs' § 2313 claims at this time.

### iii.     Mail Fraud, 18 U.S.C. § 1341

Plaintiffs allege mail fraud in violation of 18 U.S.C. § 1341 which serves as a predicate offense for their RICO claim. Mail fraud under § 1341, in pertinent part, requires someone (1) having devised a scheme to defraud or obtain property by means of false or fraudulent pretenses (2) to use the mail (3) for the purposes of executing that scheme or attempting to do so. In the case of a civil RICO claim, there must be a scheme, targeted at the plaintiff, to defraud or obtain property, and that scheme must involve fraudulent misrepresentations made to the plaintiff. *See Conn*, 5 F.3d at 184, *cert. denied*, 512 U.S. 1207. The plaintiff must have detrimentally relied upon those

---

("Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any motor vehicle, vessel, or aircraft, which has crossed a State or United States boundary after being stolen, knowing the same to have been stolen . . ."). As such, a defendant can be in violation of § 2313 for each, distinct prohibited act in § 2313 which he or she commits. *United States v. Powell*, 420 F.2d 949, 950 (6th Cir. 1970) (recognizing the separate prohibited acts of § 2313, but as dicta, since the appellant in question was only charged with concealing) (citing *Weaver v. United States*, 374 F.2d 878, 880 (5th Cir. 1967) (recognizing violation of only one prohibited act under § 2313 constitutes a basis for a § 2313 conviction)); *United States v. Hiscott*, 586 F.2d 1271, 1274 (8th Cir. 1978) (recognizing each prohibited act is a separate offense under § 2313, where the grand jury charged defendant with two prohibited acts under § 2313, but the indictment included only one); *but cf. United States v. Mitchell*, 558 F.2d 1332, 1335 (8th Cir. 1977) (in addressing a different issue under § 2313, recognizing possession of a stolen vehicle in some factual circumstances serves as an element of the concealment of that vehicle).

fraudulent representations. *Brown*, 492 F.3d at 643.

Here, as previously explained, Plaintiffs have alleged Defendants perpetrated a scheme to defraud them of property, and this scheme involved misrepresentations to Plaintiffs upon which they relied. *See* 18 U.S.C. § 1341; *Brown*, 492 F.3d at 643. With regards to mail fraud, Plaintiffs allege Clarence Emmer ("Clarence"), on September 9, 2006 and October 11, 2006, mailed two cashier's checks to Financial Federal Credit to make payment on Plaintiffs' equipment using a fictitious company name (Court File No. 4, p. 7). These actions were intended to create a fraudulent record so as to further the scheme to convert Plaintiffs' property (*see id.*). In addition, Clarence used the same fictitious company name to obtain insurance for the same purpose, on or about October 14, 2006 (*id.*, p. 8).[6] These alleged actions involve use of the United States mail to further a scheme to defraud, and thus serve as a predicate offense to support Plaintiffs' RICO claim.

### iv. Obstruction of Justice, 18 U.S.C. § 1503[7]

Plaintiffs allege Defendants obstructed justice by corruptly endeavoring to influence or impede the due administration of justice, in violation of 18 U.S.C. § 1503. A violation under § 1503 requires that a defendant knew a judicial proceeding was pending and intended to obstruct it. *See United States v. Aguilar*, 515 U.S. 593, 599 (1995); *United States v. Monus*, 128 F.3d 376, 388 (6th

---

[6]Plaintiffs also allege as mail fraud Clarence's use of an alias, "Jan San Filipo," to lease property, and Jason Emmer's use of a VISA credit card to purchase paint for the purpose of disguising stolen property (Court File No. 4, p. 8). Neither instance specifically alleges any use of the mail, and thus currently lacks the specificity required under Fed. R. Civ. P. 9(b).

[7]Plaintiffs also allege violations of 18 U.S.C. §§ 1510 and 1511. Section 1510 involves obstruction through bribery and obstruction by an officer of a financial institution. Section 1511 involves conspiracies obstructing the enforcement of the law to facilitate illegal gambling. There are no facts alleged to support a violation of either statute. To the extent Plaintiffs intended to cite these statutes, they have failed to plead them with adequate specificity to demonstrate their relevancy in this case. *See* Fed. R. Civ. P. 9(b).

Cir. 1997), *cert. denied*, 525 U.S. 823 (1998); *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 156 (6th Cir. 1990). The judicial proceeding in question must be a federal one. *United States v. Baker*, 494 F.2d 1262, 1265 (6th Cir. 1974).

Plaintiffs allege, on or about February 22, 2007, Clarence faxed fraudulent documents to law enforcement officials in an effort to impede the state prosecution of Dan Emmer, Jr. (Court File No. 4, p. 11). Plaintiffs assert "[l]aw enforcement officials investigated in preparation to file criminal charges but, after February 22, 2007, would not pursue criminal action after the Defendants produced copies of what was alleged to be three (3) legal contracts of ownership of the Plaintiffs' equipment" (Court File No. 1, p. 31). The only proceeding Plaintiffs' allege to support their obstruction of justice claim is a state proceeding, not a federal one (*see id.*). As such, the alleged obstruction of justice, which deals with a state and not a federal proceeding, does not support Plaintiffs' RICO claim. *See Baker*, 484 F.2d at 1265.[8]

### v. Interstate Travel in Aid of Racketeering, 18 U.S.C. § 1952

Plaintiffs allege Defendants violated 18 U.S.C. § 1952 by encouraging Plaintiffs to move to Georgia from Tennessee, then later by moving Plaintiffs' equipment around Georgia and back into

---

[8]Plaintiffs also allege Jason Emmer purchased paint to conceal and alter stolen equipment; Dan Emmer, Jr. and Bud Emmer transported stolen equipment across state lines; and, Dan Emmer, Sr. owned property on which stolen equipment was concealed (*id.*, p. 12). Plaintiffs allege these actions were all taken with knowledge of a pending judicial proceeding and with the intent to obstruct that proceeding (*see id.*, pp. 11-12). However, Plaintiffs have failed to tie these actions to any specific judicial federal proceeding, and have not provided the dates upon which these alleged actions occurred so as to permit the Court to make a reasonable inference as to their relation to potential proceedings (*see id.*, p. 12). *Cf. United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority.") As such, the Court does not consider these further obstruction allegations in its determination here.

Tennessee (Court File No. 4, p. 12).  To violate § 1952, a plaintiff must show an underlying "unlawful act" constituting "(1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title. . ."  Plaintiffs do not specify any unlawful activity which would satisfy the requirements of § 1952 (*see id.*), and conceded at the April 30, 2008 hearing that no such activity occurred.  Plaintiffs' § 1952 claim is without merit and does not serve as a predicate offense to support their RICO claim.

### vi. Perjury, 18 U.S.C. § 1621

Perjury in violation of 18 U.S.C. § 1621 is not a predicate offense constituting "racketeering activity."  *See* 18 U.S.C. § 1961(1).

### vii. Violations of Tennessee State Laws

Plaintiffs allege Defendants committed various offenses under Tennessee state law (Court File No. 4, p. 13).  It is unclear whether Plaintiffs are asserting these state law claims as predicate offenses (*see id.*).  To the extent Plaintiffs are, they are not the type of state offenses included as RICO predicate offenses.  *See* 18 U.S.C. § 1961(1)(A).

### viii. Summary of Alleged Offenses

Plaintiffs have sufficiently alleged various racketeering offenses at the motion-to-dismiss stage, including: wire fraud, involving at least eight telephone conversations during 2006 between Defendants and representatives of the Plaintiffs where Defendant Clarence Emmer made fraudulent

13

representations to Plaintiffs in order to facilitate a scheme to commit fraud and theft (Court File No. 4, pp. 9-10); interstate transportation of stolen vehicles, involving at least two instances during 2006-2007 (Court File Nos. 1, p. 93; 4, p. 13); and, mail fraud, where Defendants used the United States mail on at least six occasions to make payments and obtain documents to create a false record legitimizing Defendants' unlawful possession of Plaintiffs' property (Court File No. 4, pp. 7-8). These allegations constitute at least two racketeering offenses within ten years, as required by 18 U.S.C. § 1961(5).

### b. Relationship

As a second requirement to form a racketeering "pattern," the racketeering offenses, discussed above, must be related. *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The Supreme Court has interpreted this "relatedness" requirement to mean the acts in question "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. The above-described allegations of wire fraud, mail fraud, and transportation of stolen vehicles were all conducted by Defendants (primarily Clarence Emmer) for the purpose of defrauding Plaintiffs of property or otherwise furthering a scheme to do so. As such, Plaintiffs have sufficiently shown a relationship among the alleged RICO predicate offenses.

### c. Continuity

Finally, in addition to demonstrating the racketeering activities are related, Plaintiffs must demonstrate those activities form a *continuing* pattern of racketeering. *H.J.*, 492 U.S. at 240. In order to establish continuity, a plaintiff can either allege an open-ended period, comprised of related predicate offenses that threaten to continue and/or repeat, or a closed-ended pattern, comprised of

a series of related predicate offenses over a substantial period of time. *Id.* at 242. At the motion-to-dismiss stage, Plaintiffs have succeeded in establishing continuity through an open-ended pattern.

An open-ended period can be demonstrated by showing "a distinct threat of long-term racketeering activity, or that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. *Moon*, 465 F.3d at 727 (*citing H.J.*, 492 U.S. at 242). Plaintiffs allege a pattern of wire fraud, mail fraud, and the transportation of stolen goods across state lines, which was perpetrated by Defendants to further their scheme to defraud Plaintiffs of their property, and spanned over at least fourteen months, from January 2006 to March 8, 2007 (Court File No. 4, pp. 7-13).[9] Plaintiffs further allege Defendants have a history of operating "chop shops" to conceal, alter, and resell stolen vehicles and equipment, using false personal and business identities to further their frauds against rival companies, and using threats of force to intimidate others (Court File No. 21, Attachments 2, 3). The predicate offenses here are alleged to be part of the "regular way of conducting defendant[s'] ongoing legitimate business[es]." *See H.J.*, 492 U.S. at 243.

The continuity requirement under RICO is vague, *see id.*, but this Court interprets the RICO statute broadly to effectuate its purpose. *See Sedima*, 473 U.S. at 497-98. Here, Plaintiffs allege Defendants' legitimate waste removal businesses are part of a prolonged, experienced criminal enterprise, focused on frauds perpetrated against other waste removal businesses. Taking the Plaintiffs' allegations to be true, Defendants engage in an prolonged, organized criminal association which, left unchecked, threatens to continue. Thus, at the motion-to-dismiss stage, these allegations

---

[9]At the April 30, 2008 hearing, Plaintiffs alleged Defendants' scheme against Plaintiffs is ongoing, and Defendants continue their illicit attempts to obtain or retain Plaintiffs' property. Plaintiffs failed to provide any specifics as to these continued efforts, so the Court will not consider them in its analysis here.

are sufficient to fulfill the requirements for an open-ended pattern of racketeering.[10]

### d. Conclusion

Plaintiffs have sufficiently alleged a racketeering pattern to satisfy the requirements of RICO at the motion-to-dismiss stage. The Court will **DENY** Defendants' motion to dismiss Plaintiffs' RICO claim for a failure to plead with requisite specificity any pattern of racketeering activity by Defendant U.S. Waste, LLC and the other defendants (Court File No. 6).

### 2. Enterprise

Defendants next move the Court to dismiss Plaintiffs' RICO claim for a failure to sufficiently allege the existence of an enterprise, and for a failure to sufficiently allege Defendants' participation in the operation or management of any such enterprise (Court File No. 5, p. 2). Because Plaintiffs have sufficiently pleaded the presence of an enterprise independent of the racketeering pattern, the Court will **DENY** Defendants' motion to dismiss (Court File No. 5).

RICO does not apply to a simple conspiracy to commit racketeering activities. *See VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000). A RICO offense requires an enterprise which exists independently from the racketeering activity in which it engages. *States v. Turkette*, 452 U.S. 576, 583 (1981). This independent enterprise can be comprised of "any individual, partnership, corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It can be proven "by showing 1) that the associated persons formed an ongoing organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern

---

[10]Because Plaintiffs have satisfied continuity through a showing of an open-ended pattern of racketeering, the Court need not consider at this stage whether Plaintiffs have also satisfied a closed-ended pattern.

of racketeering activity in which it engaged." *VanDenBroeck*, 210 F.3d at 699 (*citing Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993)); *accord Begala v. PNC Bank, Ohio, Nat'l Assoc.*, 214 F.3d 776, 781 (6th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001) (*citing Frank*, 4 F.3d at 1386) (a plaintiff's burden in a RICO claim is to "cogently allege activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact."). A primary consideration is whether there exists a hierarchical structure in the enterprise. *See VanDenBroeck*, 210 F.3d at 699; *see also United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir. 1996), *cert. denied*, 519 U.S. 999 (1996).

Here, Plaintiffs allege two enterprises: (1) the named Defendants, U.S. Waste Atlanta, LLC, U.S. Waste, LLC, of Milwaukee, Wisconsin, and other unnamed trash collection companies (Court File No. 4, pp. 15, 17); and (2) the law firm of Miller & Martin, PLLC (*id.*, p. 15). The first enterprise, involving trash collection companies including U.S. Waste, LLC and U.S. Waste Atlanta, LLC, continues to operate as a functioning network of trash collection companies (Court File No. 4, p. 17). This organization exists separately from the alleged pattern of racketeering. *See VanDenBroeck*, 210 F.3d at 699 (citing *Frank*, 4 F.3d at 1386). It is a formal, ongoing, functional unit. *See id*. The enterprise also appears to possess some level of authoritative hierarchy. Plaintiffs allege Defendant Clarence Emmer owns one hundred percent of U.S. Waste, LLC, which owns eighty percent of U.S. Waste Atlanta, LLC (*id.*, p. 15); Jason, Bud, and Dan (Jr.) Emmer are employees of these enterprises (*id.*, pp. 15-16); and, Dan Emmer, Sr. works in some capacity in housing equipment for the companies (*id.*, p. 16). At this early stage in the litigation, without benefit of discovery, Plaintiffs provide enough indication of an organized hierarchy within the enterprise. *See id.*

As such, the Court will **DENY** Defendants' motion to dismiss for failure to sufficiently allege an enterprise separate from the racketeering pattern (Court File No. 5, p. 2).[11]

### 3. State Claims

Defendants move the Court to decline supplemental jurisdiction over Plaintiffs' state claims because "[e]ach of these alleged offenses are currently pending in the Chancery Court of Hamilton County between U.S. Waste LLC and Mark Englund and William Englund" (Court File No. 6, p. 11). The state claims alleged here include Forgery (Tenn. Code Ann. § 39-14-114), Hindering Creditors (Tenn. Code Ann. § 39-14-116), Theft and Vandalism (Tenn. Code Ann. § 39-14-101, et seq.), and Accessories after the Fact (Tenn. Code Ann. § 39-11-411) (Court File No. 4, p. 13). Plaintiffs dispute Defendants' characterization, arguing the parties in the state court proceeding are not parties here and the claims in the state court - breach of contract, conversion, and promissory fraud - are also distinct (Court File No. 9, p. 7).

Because the Court retains federal subject matter jurisdiction, it will retain supplemental jurisdiction over the state claims. 28 U.S.C. §§ 1331, 1367. Both parties asserted at the scheduling

---

[11]Because Plaintiffs have sufficiently alleged one enterprise at the motion-to-dismiss stage, there would normally be no need for this Court to address Plaintiffs' second alleged enterprise. However, the identity of the second enterprise, Miller & Martin, PLLC, raises another concern, because attorneys from Miller & Martin, PLLC are also representing Defendants in this matter (*see* Court File No. 4, p. 17). Plaintiffs argue attorneys at Miller & Martin, PLLC instigated litigation on Defendants' behalf, using as key evidence contracts these attorneys knew or should have known were fraudulent (Court File No. 1, p. 99). In potential contradiction, Plaintiffs then assert on the next page Miller & Martin, PLLC was a victim of Defendants' efforts to intentionally defraud the law firm (*id.*, p. 100).
   As both parties are no doubt aware, the Tennessee Rules of Professional Conduct limit the circumstances in which an attorney can act as an advocate at a trial in which he, or even a member of his law firm, is likely to be a necessary witness. Tenn. Sup. Ct. R. 8, RPC 1.7(b), 3.7. The Court is unable to ascertain from the filings thus far whether this is or may become an issue, but notes the issue now so that it may be addressed early in the litigation if necessary.

conference on January 18, 2008 that the state proceedings did not require this Court to stay the federal proceedings pending their resolution. Similarly, neither party indicated a stay was necessary or would be beneficial at the hearing on April 30, 2008. Thus, from the very limited information this Court has been provided concerning the nature and scope of the state proceedings thus far, the Court has no basis to believe the state claims would be better raised and adjudicated in state court. As such, the Court will **DENY** Defendants' motion to decline jurisdiction over Plaintiffs' state claims (Court File No. 5, p. 2).

**IV.     CONCLUSION**

Accepting Plaintiffs' allegations as true at the motion-to-dismiss stage, Plaintiffs have pleaded sufficient facts upon which to support their claims under RICO. As such, the Court will **DENY** Defendants' motion to dismiss based upon a failure to plead certain RICO elements with requisite specificity (Court File No. 5). Because this Court retains federal subject-matter jurisdiction and Defendants have not made a sufficient showing as to why the state law claims before this Court should otherwise be dismissed in light of related, on-going proceedings in state court, the Court will **DENY** Defendants' motion to decline supplemental jurisdiction over Plaintiffs' state claims (*id.*).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**