UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

STAR WASTE SERVICES, LLC, )
ENGLUND BROS. COMPANY, INC., )
STAR WASTE DISPOSAL, LLC, )
AMERICAN WASTE NETWORK, LLC, )
AMERICAN WASTE SERVICES, LLC, )
LADIES FIRST WASTE, LLC, )
 )
           Plaintiffs, )
 ) No. 1:07-CV-127
v. )
 ) Chief Judge Curtis L. Collier
U.S. WASTE, LLC, )
CLARENCE JOSEPH EMMER, )
DAN FRANKLIN EMMER, SR., )
DAN FRANKLIN EMMER, JR., )
JASON R. EMMER, )
GEORGE FRANKLIN EMMER, )
BUD FRANKLIN EMMER, JR., )
 )
           Defendants. )

**MEMORANDUM**

Before the Court is a motion for summary judgment filed by Defendants U.S. Waste, LLC, Clarence Emmer, Dan Emmer Sr., Dan Emmer Jr., Jason Emmer, George Emmer, and Bud Emmer Jr. ("Defendants") (Court File No. 72) and a motion to continue the trial filed by Plaintiffs Star Waste Services, LLC, Englund Bros. Company, Inc., Star Waste Disposal, LLC, American Waste Network, LLC, American Waste Services, LLC, and Ladies First Waste, LLC ("Plaintiffs") (Court File No. 102). Plaintiffs filed a response (Court File No. 88) and an amended response (Court File No. 93). Defendants filed a reply (Court File No. 91). For the following reasons, the Court will **GRANT** Defendants' motion for summary judgment on the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, 1964 claims (Court File No. 72). The Court

will decline to exercise supplemental jurisdiction over the remaining claims and will **REMAND** the remaining claims and counterclaim to state court. Plaintiffs' motion to continue the trial date (Court File No. 102) will be **DISMISSED AS MOOT**.

I.     RELEVANT FACTS

As the Court outlined in its memorandum on Defendants' motion to dismiss (Court File No. 30), this case involves a dispute between two family owned and operated businesses in the waste disposal industry. The plaintiffs are entities owned and operated by the Englund family, while U.S. Waste, LLC, is owned by the Emmer family. The remaining, individual defendants are members of the Emmer family, who operate or otherwise are connected to Defendant U.S. Waste, LLC. William Englund Sr. and his wife, Susan Englund, formed Plaintiff Star Waste Services, LLC, ("Star Waste Services") in 2000 as a commercial and residential waste hauling business. This business suffered financially and in 2003, Star Waste Services filed for Chapter 11 bankruptcy. In 2005, after Star Waste Services emerged from bankruptcy, it leased its equipment and conveyed its customer accounts to Star Waste Disposal, LLC ("Star Waste Disposal"), another family related business. Star Waste Disposal was founded in 2005 with Mark Englund, William Englund Sr.'s son, as the 100% member/manager. In March 2006, Mark Englund transferred 99% of his membership interest to his brother, William Englund Jr., and took a limited role in managing the company. In 2006, Star Waste Disposal was primarily managed by William Englund Jr. with the assistance of Jessica Parker. Star Waste Disposal was always in a precarious financial condition during its short operational existence. In the summer of 2006, a number of Star Waste Disposal's customers complained to the Better Business Bureau. Bank records show Star Waste Disposal operated at a loss in 2006. In

August 2006, Star Waste Disposal defaulted on its office lease and vacated its sale office location. The parties agree an undated letter evidenced an agreement reached in September 2006 for Allied Waste, an apparently unrelated third party, to service Star Waste Disposal's residential customers in Chattanooga (*see* Court File Nos. 93, p. 9; 74, Ex. 3, p.1).

According to Plaintiffs, in January 2006 Clarence Emmer called William Englund Sr. and proposed a joint venture in the commercial waste business, which Plaintiffs accepted. Plaintiffs expected to draft paperwork solidifying the alliance through Plaintiffs' attorney in Chattanooga and Clarence Emmer's attorney in Milwaukee, Wisconsin, but Defendants' attorney never contacted Plaintiffs' attorney to draft or review paperwork. Plaintiffs allege Defendants then proceeded to use various tactics to steal Plaintiffs' property through fraud and outright theft. Defendants, having illicitly obtained or unsuccessfully sought to obtain the majority of Plaintiffs' assets, renounced the agreement.

To satisfy the requirements of alleging RICO predicate offenses, Plaintiffs claim they are one of many victims in Defendants' history of similar schemes. Plaintiffs allege fraud, the theft of other companies' equipment, the use of chop-shops to conceal and alter stolen goods for personal use or resale, and the use of personal aliases and varying company names to perpetuate their fraudulent schemes are all part of the continuing way in which Defendants do business.

The parties have previously litigated and continue to litigate matters that appear material to this suit in state court. The individual owners of the plaintiff companies have sued parties unrelated to the defendants here over news reports and some Defendants have sued individual owners of the plaintiff companies to determine ownership of various assets. The parties informed this Court at a scheduling conference on January 18, 2008, that the pending state case is of limited scope dealing

3

only with two plaintiffs and two defendants, and dealing with a fraction of the property and damages involved here, namely three trucks and an unspecified number of commercial trash containers. Both parties represented to this Court the federal proceedings need not be delayed pending the resolution of the state court case.

The Court has previously ruled on a motion to dismiss, which was denied (Court File No. 31). However, the Court determined RICO required allegations of specified predicate offenses and the allegations of obstruction of justice in a state proceeding, interstate travel in aid of racketeering, perjury, and violations of Tennessee state laws were not RICO predicate offenses, while allegations of wire fraud, mail fraud, and interstate transportation of stolen vehicles were RICO predicate offenses (Court File No. 30, pp. 6-14).

**II.     STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797,

800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III. ANALYSIS**

Defendants contend Plaintiffs have shown no genuine issue as to any material fact regarding Plaintiffs' claims under RICO and Defendants are entitled to summary judgment. Specifically, Defendants assert the undisputed evidence shows the Plaintiffs were not damaged in business or property by Clarence Emmer, Plaintiffs' businesses failed due to mismanagement and not Clarence Emmer's actions, Clarence Emmer did not engage in a pattern of racketeering, Plaintiffs are judicially estopped from pursuing this case, and Plaintiffs have failed to state a claim against the conspiracy Defendants (Court File No. 74).

In order to establish a civil RICO violation, Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006); *see also Trollinger v. Tyson Foods, Inc.*, 543 F. Supp. 2d 842, 845 (E.D. Tenn. 2008). Plaintiffs must also show an injury to "business or property" that was "by reason of" a RICO violation. 18 U.S.C. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2141 (2008); *see also Trollinger*, 543 F. Supp. 2d at 845.

Plaintiffs, in responding to Defendants' motion, merely indicated whether they agreed or

5

disagreed with Defendants' statement of undisputed material facts (Court File No. 93). In moving for summary judgment, Defendants asserted the record showed they were entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 325 ("the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case."). After the discovery deadline had passed, Defendants filed the motion for summary judgment, noting Plaintiffs had taken no depositions in the case and listing the dispositive issues Defendants argued could be resolve based on the undisputed facts in the record (Court File No. 74). This shifted the burden to Plaintiffs to submit evidence supporting their claims. *Celotex*, 477 U.S. at 324 ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"). Plaintiffs, however, relied on the allegations in the amended complaint and the evidence submitted by Defendants, attaching only a copy of the Star Waste Services bankruptcy docket sheet and an exhibit from an unrelated bankruptcy filing in the United States Bankruptcy Court for the District of Delaware as additional evidence (Court File Nos. 93, 88). These two exhibits are relevant only to the dispute as to the value of Plaintiffs' equipment. Plaintiffs failed to produce any probative evidence on the other issues raised by Defendants, but instead relied "merely on allegations or denials" in the pleadings as prohibited in Fed. R. Civ. P. 56(e)(2). Since Plaintiffs did not show a genuine factual dispute as to the issues raised by Defendants, summary judgment is appropriate if the record shows Plaintiffs cannot succeed on their claims as a matter of law.

    **A.**    **Pattern of Racketeering**

Defendants assert the record includes no evidence of a continuing pattern of racketeering activity. Defendants argue the predicate acts alleged by Plaintiffs occurred after Star Waste Disposal

6

had ceased operations in Chattanooga, in August 2006, and, therefore, the record does not support a finding of continuity. Defendants argue the record does not support a finding of long-term criminal conduct to establish a pattern of racketeering. In addition, Defendants point to the lack of probative evidence underlying Plaintiffs' allegations of ongoing criminal activity.

In Plaintiffs' response, they repeat the allegations "the Defendants conspired to steal equipment Star Waste Services leased to Star Waste Disposal. . . . [and] assets leased by Star Waste Disposal, LLC from other creditors. Furthermore, Defendants have stolen equipment from other non party victims" (Court File No. 93, p.5). However, Plaintiffs submitted no factual support for these assertions. Relying on allegations is insufficient to oppose a motion for summary judgment. Fed. R. Civ. P. 56(e)(2). Since Plaintiffs failed to demonstrate a factual dispute, the Court will analyze the Defendants' argument based on the evidence in the record.

To establish a "pattern of racketeering activity," Plaintiffs must demonstrate (1) at least two predicate acts of racketeering activity within a ten-year period constituting a pattern of (2) related and (3) continuous racketeering behavior. *Moon*, 465 F.3d at 723-24. Relatedness is shown where the predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 724 (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)) (internal quotation marks omitted). Defendants move for summary judgment solely on the continuity prong and do not challenge Plaintiffs' allegations of predicate acts of wire fraud, interstate transportation of stolen vehicles, and mail fraud, or that these acts were related because they had the same purpose of depriving Plaintiffs of assets and were committed primarily by Defendant Clarence Emmer. Although the record does not contain evidence supporting the existence of the predicate acts or

7

relatedness of those acts, since Defendants only contend Plaintiffs cannot show the predicate acts have sufficient continuity, the Court will assess whether summary judgment is appropriate on that issue.

Continuity can refer to either "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241. Closed-end continuity can be established by "proving a series of related predicates extending over a substantial period of time." *Id.* at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct" do not support a finding of continuity since Congress was concerned with long-term criminal conduct. *Id.* Open-end continuity is more fact dependant and relies upon the demonstration of a distinct threat of future long-term criminal conduct. *Id.* Such continuity can be shown by a "specific threat of repetition extending indefinitely into the future" or "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* Short periods of criminal activity that do not carry a threat of ongoing criminal activity do not demonstrate continuity. *Id.* at 243 n.4.

In the Court's memorandum analyzing the Defendants' motion to dismiss the complaint, the Court determined Plaintiffs had made sufficient allegations to support open-ended continuity based on a pattern of wire fraud, mail fraud, and the transportation of stolen goods across state lines, which was perpetrated by Defendants to further their scheme to defraud Plaintiffs of their property, and spanned over at least fourteen months, from January 2006 to March 2007 (Court File No. 30). In addition, Plaintiffs alleged Defendants operated "chop shops" to conceal, alter, and resell stolen vehicles and equipment, using false personal and business identities to further their frauds against rival companies, and using threats of force to intimidate others. At summary judgment, however,

8

Plaintiffs cannot rely on allegations and speculation.

Defendants contend there is no evidence to support a finding of continuity. Based on the deposition testimony submitted by Defendants, the Emmers' alleged involvement with Star Waste Disposal occurred over a short period of time. William Englund Sr. testified members of the Emmer family convinced Star Waste Disposal to give them equipment in June 2006 (Court File No. 74, Ex. 3, p.35). Mark Englund testified he relied on statements made by Clarence Emmer throughout 2006, but did not specify which statements could be categorized as wire fraud (Court File No. 64, Ex. 4, p.9). William Englund Jr. testified Clarence Emmer paid rent on an apartment for him and Mark Englund at the end of 2006 (Court File No. 64, Ex. 4, p.35). Although Plaintiffs contend Clarence Emmer committed acts of wire fraud throughout 2006, nothing on the record evidences specific, repeated instances of fraudulent misrepresentations. The record contains no evidence of specific predicate acts occurring before June 2006. Plaintiffs have not alleged any predicate acts past March 2007, therefore, the relevant period of time is at most nine months. Nine months is insufficient to establish closed-end continuity as a matter of law. *Moon*, 465 F.3d at 725 (determining predicate acts occurring over a nine-month period did not amount to a "substantial period of time.").

Although nine months is insufficient to support a finding of closed-end continuity, short periods of racketeering activity can establish open-end continuity if there is "a distinct threat of long-term racketeering activity" or "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J., Inc.,* 492 U.S. at 242. Defendants assert Plaintiffs have also failed to identify any evidence supporting open-end continuity. Although Plaintiffs alleged Defendants repeatedly engaged in racketeering activity, in his deposition testimony, William Englund Sr. refused to reveal any sources for his contention Clarence Emmer continually stole,

9

altered, and sold waste containers (Court File No. 74, Ex. 3, pp. 36-39). Other than William Englund Sr.'s allegations, which could not support a jury finding of continuity, no evidence on the record exists as to a threat of long-term racketeering activity or Defendants' way of doing business. Based on the record, Plaintiffs have not demonstrated open-end continuity.

Since Plaintiffs have not made a sufficient showing on establishing continuity, which is an essential element for which they bear the burden of proof, summary judgment is appropriate. Based on the record, a fair-minded jury could not return a verdict in favor of Plaintiffs on the RICO claims.

### B. Injury "By Reason of" Alleged Predicate Acts

Although the Court has determined a deficiency that requires summary judgment be granted, the Court will discuss the remaining issues regarding the RICO claims. Defendants argue the evidence on the record demonstrates Star Waste Disposal failed due to mismanagement and the alleged predicate acts had no effect. Plaintiffs did not address this argument in their response and failed to submit any evidence relevant to causation.

In order to recover under RICO, Plaintiffs must establish Defendants' actions were the proximate cause of Plaintiffs' injuries. *Brown v. Cassens Transport Co.*, 546 F.3d 347, 357 (6th Cir. 2008). Proximate cause demands "some direct relation between the injury asserted and the injurious conduct alleged." *Bridge*, 128 S. Ct. at 2142 (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)) (internal quotation marks omitted). In order to recover on a RICO violation, Plaintiffs must show the alleged predicate acts were the "'substantial and foreseeable cause' of the injuries alleged by the plaintiffs." *Brown*, 546 F.3d at 357. As the Court noted in *Tollinger*, "Plaintiffs must provide evidence to establish a direct causal connection between their claimed injury . . . and the predicate offense conduct." 543 F. Supp. 2d at 857.

10

Plaintiffs failed to demonstrate a factual dispute, therefore, the Court will analyze the Defendants' argument based on the evidence in the record. Defendants contend any injury suffered by Plaintiffs was caused by the owners and managers of the businesses, not Defendants' alleged actions. According to the amended complaint, Plaintiffs allege Defendants devised a fraudulent scheme to defraud Plaintiffs of their assets. The record shows Plaintiffs were already moving out of the Chattanooga market and had closed their operations in Chattanooga by the end of August 2006 (Court File No. 74, ex. 3, pp. 3-4, ex.4, pp. 41-46). Although Plaintiffs' alleged injury is the loss of their assets, not the overall demise of the operations in Chattanooga, Plaintiffs have failed to point to any evidence on the record supporting a direct link between the loss of assets and the alleged predicate acts. Since Plaintiffs have not provided any evidence to establish causation, summary judgment is appropriate.

**C.   Injury**

Defendants also contend Plaintiffs have suffered no injury because Star Waste Disposal never made a profit and was out of business by the end of August 2006. In addition, Defendants assert the assets allegedly fraudulently obtained by Defendants were deemed to have limited value in Star Waste Services's bankruptcy proceeding. Star Waste Disposal leased the majority of its equipment from Star Waste Services, therefore the parties agree the equipment owned by Star Waste Services during its 2005 bankruptcy proceeding is the equipment Plaintiffs allege Defendants stole (*see* Court File No. 93, p.5). Plaintiffs do not contest that Star Waste Disposal operated at a loss. Plaintiffs do dispute Defendants' characterization of the value of the assets, contending the liquidation figure used in bankruptcy does not represent the fair market value, but did not submit evidence of the value of the Star Waste Services equipment (Court File No. 93). Since Plaintiffs

11

have not included evidence of the value of the assets, there is no genuine dispute and the only evidence on record shows the value as $71,300, as determined in the bankruptcy proceeding. Since the equipment had value, however, Plaintiffs still suffered an injury by virtue of losing these assets.

Regardless of the actual value of the assets lost, since the parties do not contest whether the assets had value, this fact is not material and cannot form the basis for summary judgment.

### D. RICO Conspiracy

Defendants contend the conspiracy claims against Defendants Dan Emmer Sr., Dan Emmer Jr., Jason Emmer, and George Emmer should be dismissed because the record does not show the existence of an agreement to commit two or more predicate acts to a RICO violation. Plaintiffs' response does not address this argument and Plaintiffs submitted no proof of an agreement. To prove a violation of 18 U.S.C. § 1962(d), Plaintiffs must show a conspiracy with the purpose of violating 18 U.S.C. § 1962(c). *Trollinger*, 543 F. Supp. 2d at 845. The record contains no evidence relating to an agreement between Clarence Emmer and any other Defendant, or among the individual defendants. Therefore, summary judgment is appropriate on the RICO conspiracy claims.

### E. State Claims

Since the Court will grant summary judgment on the RICO cause of action, the only remaining claims are the state claims and counterclaims. Under 28 U.S.C. § 1367(c)(3), a court has discretion to dismiss claims supported only by supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. Since the grant of summary judgment on the RICO claims against Defendants dismisses all claims over which the Court has original jurisdiction, the Court must assess whether it should continue to exercise supplemental jurisdiction over the state claims.

At every stage in litigation, the court should weigh the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 483 U.S. 343, 350 (1988). Where, as here, all jurisdiction conferring claims are eliminated prior to trial, the factors tend to weigh in favor of dismissal. *Id.* n.7; *see also Thurman v. DaimlerChrysler*, 397 F.3d 352, 359 (6th Cir. 2004) ("We have previously held that when all federal claims have been dismissed before trial, the best course is to remand the state law claims") (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Stratienko v. Chattanooga-Hamilton County Hosp. Authority*, 2009 WL 736007, *26 (E.D. Tenn. Mar. 17, 2009) (declining to exercise supplemental jurisdiction where the claims based on federal question jurisdiction were dismissed).

Two state cases relating to this cause of action are already being litigated in state court, including a case on who owns assets that appear to be in question in this case. Although the parties represented to the Court at the scheduling conference on January 18, 2008, and at the hearing on April 30, 2008, that the state proceedings did not require this Court to stay the federal proceedings pending their resolution, Defendants argued issues related to the state proceedings in their motion for summary judgment and used depositions taken for state cases in support of the motion. The Court determines the state claims would be best resolved in state court. Therefore, the Court will remand the state claims to the Circuit Court of Hamilton County, Tennessee.

## IV. CONCLUSION

Plaintiffs have not met their burden of showing a genuine issue as to a material fact on the RICO claims against Defendants. Therefore, summary judgment is appropriate on the RICO claims.

13

Since the elimination of the federal claims removes any claims over which this Court has original jurisdiction, the remaining claims will be remanded to state court. Defendant's motion for summary judgment will be **GRANTED** and the remaining claims will be **REMANDED** to state court. Given this conclusion, Plaintiffs' motion to continue the trial date will be **DENIED AS MOOT**.

    An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**